Clara **FANESTIEL**, Individually and as Next Friend of Shane Fanestiel, Relator,

v.

The Honorable Lee **ALWORTH**, Judge, 221st Judicial District Court of Montgomery County, Texas, Respondent.

No. 09–92–320 CV.

Court of Appeals of Texas, Beaumont.

May 27, 1993.

Rehearing Denied June 15, 1993.

Mark D. Haas, Law Offices of K. Michael Mayes, Conroe, for relator.

Joe W. Redden, Jr., Beck, Redden & Secrest, Houston, for real party in interest.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Writ of Mandamus proceeding.

The paramount issue, it appears, is that the relators have propounded certain interrogatories and made certain requests requiring opposing counsel to provide the names and identifications of other law suits and other parties who have made claims arising out of occurrences that arose in the use of certain electric blankets. These blankets are described as double size, double controls, electric blankets. It was contended that counsel for the defendants had agreed in the past to provide the names and styles of the other law suits and the names of the parties. This agreement, if it was a valid one, was limited to all claims, and other law suits. The alleged agreement is unclear as to the claims beginning in the year 1980 to the present time, involving this model and make of blanket, as well as any predecessor blanket.

The trial court's announced reasoning, as revealed in the record, was that the trial court had no problem with ordering the defense counsel to tell the plaintiffs' counsel about the other law suits and the other claims involving the blanket in question. However, after that information was obtained, the trial court declared the burden was upon the plaintiffs' attorney to investigate those law suits and those claims.

The trial court was not willing to order the lawyers for the defense to check the court records in detail. *The trial court felt that it should not be burdened with conducting an in camera inspection of the resulting investigative matters from some approximately 5000 law suits which may have been filed all over the United States.*

■ Involved in some of the requests were cases that were still in litigation and some of the matters requested in the broad interrogatory were privileged. The lawyer's work product has continuing privilege. *Owens–Corning Fiberglas v. Caldwell,* 818 S.W.2d 749 (Tex.1991). Some of

the requests had to do with blankets that were not the same or similar to the blanket in question and the judge observed that the plaintiffs had not abided by his previous orders of discovery in that the plaintiffs had not sent a report of their expert to the defense lawyer. The trial court had heard an earlier motion; then the court required the motion to be limited in scope. Relators failed to heed the court. The trial judge found that the two motions for discovery were so similar that the plaintiffs had failed to follow his instructions.

■ Again and basically, the attorney for the plaintiffs claim that Wal–Mart, a defendant and real party in interest, and Fieldcrest were in possession of certain claim files and investigation files on other matters and that these matters were discoverable. But a recent opinion by our Supreme Court reexamines the relators' contentions. *National Tank Co. v. Brotherton,* 851 S.W.2d 193 (April 7, 1993) (subject to motion for rehearing).

The defense took the position that the interrogatories involved were too broad and that the interrogatories asked for every piece of paper that the defendants had in each and all of the other law suits. The defense stated that it had agreed to deliver the notices of the claim on this model of blanket and the predecessor blanket and later blankets.

Involved in this instant writ of mandamus are later motions for discovery and a motion for an in camera inspection. As to the in camera inspection, the motion asks an order that all investigative files, claims, records, and other documents be brought forward. The relators argued that privilege could only be invoked where the documents sought to be protected were actually prepared in the defense of the underlying law suit. The court determined the motion was still too broad. *National Tank Co. v. Brotherton, supra; Owens–Corning Fiberglas v. Caldwell, supra.* See also *Walker v. Packer,* 827 S.W.2d 833 (Tex. 1992).

In district court, the relators agreed to limit their discovery to the investigation files and the claim files. After further dialogue, the court stated that the interrogatory was simply too broad. We agree. Furthermore, the record before us reveals that the relators obtained an expert but had failed to furnish a copy of his opinion even though requested by the defendants. In fact, the attorney for the defendants stated to the trial court that perhaps a one page report would suffice stating very briefly the defects in the blanket in question.

The defendants argue that the trial judge's rulings at the conclusion of the hearing of November 24, 1992 are not an abuse of discretion. We agree. These rulings cannot be viewed or analyzed in a vacuum. The hearing and the rulings should be viewed as a culmination of an involved discovery process. This process began on or about the first week in December of 1991.

In Interrogatory No. 6, the relators petition for the names and addresses of all persons and all entities that had ever given to Fieldcrest a notice or had made a complaint to Fieldcrest that this type of electric blanket was either dangerous, unsafe, or defective or had contributed to cause injuries to a person due to the blanket catching on fire. *Fieldcrest had agreed to provide this information. Fieldcrest had not thwarted discovery.* Interrogatory No. 7 sought certain addition voluminous information and material. Interrogatory No. 7 reads:

7. With respect to your Answers to Interrogatory No. 6, please give in specific detail the substance of each notice or complaint, the date(s) of same, to whom said notice(s) or complaint(s) were given, whether they were in writing or orally, whether this Defendant or any other person or entity performed any changes, additions, alterations or repairs and/or issued any warnings or recalls pertaining to said product(s) following each notice of complaint (if so, give a complete description of what was done in regard to all cases), and identify all records, memos, correspondence and documents, and their location, record-

ing or relating to each notice, complaint, change, alteration, repair, warning and recall.

At a hearing on April 27, 1992, the trial judge sustained Fieldcrest's objections. The relators then filed a motion for rehearing. At another hearing on June 29, 1992, the trial judge adhered to his original ruling.

In August, Fieldcrest did supplement its discovery responses to provide the information about the other claims that it had agreed to provide in its original responses. This information was in the form of claim sheets. These sheets identified the blankets involved, the name and the address of the blankets owners, the date of the event complained of, the date that Fieldcrest received the complaint, the date the matter was closed, and the amount, if any, that was paid to resolve the complaint.

Later, after receiving this additional voluminous information, the relators then filed another broad request. The relators were seeking voluminous documentation pertaining to certain other claims. Among other things, the relators asked for all documents, reports, statements, notes, memos, complaints kept by insurance companies, adjusters, investigators and or other experts relating to all claims, referring to the claims sheets which had been produced previously by Fieldcrest. In this posture of discovery, the court determined the contested motion was too sweeping.

Tex.R.Civ.P. 166b(4) provides in relevant part that when a party seeks to exclude certain documents from discovery and the basis for the exclusion is undue burden or unnecessary expense or harassment or invasion of certain rights; then it becomes unnecessary for the trial court to conduct an inspection and review of that particular discovery material before ruling on the objections. Furthermore, the trial court may make any order in the interest of justice that is necessary to protect a party from undue burden, unnecessary expense, harassment, or annoyance or invasion of certain rights.

Under the entirety of the record we simply cannot conclude that the trial judge abused his discretion of this matter. *See and compare Walker v. Packer, supra.*

Basically, the trial court had two careful, correct hearings on the matter and from the record before us it appears that the trial court was right in concluding that the later motion for discovery of the relators was as broad, if not broader, at the time of the second hearing than it had been at the time of the first hearing. Therefore, the sanctions were not unreasonable. *See* Tex. R.Civ.P. 215(3). It clearly appears that the last motion for discovery did encompass certain exemptions or matters that were not properly subject to discovery. Tex. R.Civ.P. 166b(3).

■ A district court or a trial court abuses its discretion when it reaches a decision that is so arbitrary and unreasonable that it results in a clear and prejudicial error of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916 (Tex.1985). No such clear and prejudicial error of law is shown; no abuse is shown.

At the intermediate level we must make a careful inquiry as to whether the trial court's order was so arbitrary and unreasonable that it resulted in the clear and prejudicial error of law. If the determination of the discovery matter lies within the discretion of the trial court, as we think it did here; then the trial court's ruling will not be disturbed. We determine, under the record before us, that the trial court did not reach a decision or enter an order that was arbitrary and unreasonable.

In the Houston Chronicle for May 2, 1993, in the business section, page 1E, there is a piercing and revealing article about discovery procedures written by Jim Barlow. The article is entitled "Lawyers should 'discover' ethics". This headline is a play on words. The first paragraph of the article reads:

Are the nation's courtrooms a place to dispense justice, or just a site for lawyers to make money?

The article by Jim Barlow is of significance and importance. The article represents, to some degree, the thinking of the print journalists. The Texas judiciary, within rea-

sonable, logical limits, should be appropriately aware of what the journalists are thinking and writing. The article makes this indictment—that lawyers use the court rules of procedure, too often, to run up unjustified bills, which clients must pay. Further, the result is that many Americans are being priced out of the civil justice system.

The journalist concedes that the media is starting to see certain changes—led by judges of the state and federal systems—to control these costs, which usually come in the pretrial search for facts known (to the public generally) as discovery. Barlow's view is:

> Discovery is where each side tries to bury the other in paper. Punch the print-out button on the word processor and make your opponent spend thousands of dollars responding to your canned questions.

> Tie up your opponent in endless depositions—the taking of testimony before the trial begins—and he might be willing to settle despite the facts, just to get back to work at something that makes money.

Columnist Barlow writes that:

> [W]e should see new discovery rules in federal courts. They will reverse the way the process works.

> Under current court procedures, to get relevant information from the other side, you must ask for it in a very specific manner.

> So lawyers ask the same question over and over in slightly different forms.

> The new rules say that shortly after the suit is filed, each side must volunteer everything they know about the case and continue that disclosure when new facts come up.

> . . . .

> Some of the most far-reaching changes came in the Eastern District of Texas—which includes Tyler and Beaumont. One reason for that is the interest of Chief Judge Robert M. Parker—who also heads a committee of the nationwide Judicial Conference Committee looking into reform.

> The district reforms, which go somewhat beyond those planned for the national level, have halved the time it takes to get to trial—down to from five to nine months, depending upon a case's complexity.

> Lawyers call it 'The Rocket Docket'.

We are not in agreement with everything that columnist Barlow writes. However, we perceive ·that our opinion is simpatico with the newspaper article, although the article, we state, is not authority for the denying of the writ of mandamus.

Of relevance to the discovery process and to this opinion is this exchange between the trial judge and plaintiff-movant's counsel in the district court:

THE COURT: I think that's because his original objection to the interrogatories that we're talking about was really because you went on an extreme fishing expedition. Your interrogatory was so cotton picking broad—

[PLAINTIFF–MOVANT'S COUNSEL]: Broader—

THE COURT: What you're telling me now, Counsel, "agreed that I'm narrowing my request but even though I've narrowed it down to something else, some of this narrowed part that he's still refusing me and I want you to make him do that. I want you to make him give it to me." But I'm still dealing with an interrogatory that was so broad in my initial ruling and I don't have before me a new interrogatory stating to me precisely what it is that you're wanting and giving him an opportunity to say those precise things are privileged and here they are and we claim this privilege because either attorney-client privilege, whatever other privilege he may claim and—

■ The rule seems well established that when a motion for discovery is as broad as the one in the appeal sub judice that the trial judge is under no obligation to have an in camera hearing. Such an in camera hearing would, in reasonable probability, be burdensome, lengthy, time consuming and thereby wasteful of judicial resources. We are confident in this case that the inten-

tions and the motives of the movant below were proper and ethical; but if a writ of mandamus was granted ordering the trial judge to have extensive hearings in camera, it would have the pragmatic effect of putting one lawyer in a position of forcing his opponent to prepare the movant's case for the movant. This would be very detrimental to the adversative philosophy of the trial of the case.

■ For a writ of mandamus to properly lie to correct a contended-for discovery error, the discovery order must constitute a clear abuse of the trial court's discretion. *See National Tank v. Brotherton, supra.* This recent Supreme Court opinion justifies a revisitation. In this original proceeding, the Supreme Court was called upon to make a determination whether accident reports and witness statements were privileged from discovery under certain circumstances. The court reexamined the attorney's work product privilege. The court modified its previous decision and opinion in *Flores v. Fourth Court of Appeals*, 777 S.W.2d 38 (Tex.1989) and held that investigative documents prepared in "anticipation of litigation" for the purposes of TEX. R.CIV.P. 166b(3) are protected if (1) a reasonable person would have concluded from the totality of the circumstances surrounding the investigation that there was a substantial chance that litigation would ensue; and (2) the litigant resisting discovery believed in good faith that there was a substantial chance of litigation, that litigation would ensue and conducted the investigation for the purposes of preparing for such litigation.

The Supreme Court reasoned that this rational approach to these discovery problems will further the public policy underlying the investigatory privileges—without unduly restricting discovery inasmuch as these investigatory privileges may be superseded where the requesting party demonstrates or proves that a substantial need for the materials exists and that undue hardship would be incurred in obtaining the substantial equivalent of the materials by means other than discovery procedure. TEX.R.CIV.P. 166b(3).

The Supreme Court affirmatively wrote that it was altering the controlling law. We perceive that *National Tank Co.* should be consulted in the discovery procedures in the litigation sub judice. The opinion also involved National Tank Company's objections to producing any reports that were prepared in connection with the accident investigation. National Tank Co. objected on the basis of attorney-client privilege, attorney work-product privilege, witness statement privilege, and party-communication privileges. Some basic facts in *National Tank Co.* are appropriate.

### *Skeletal Facts of National Tank Co.*

Mr. Rex Wilson was fatally injured in an explosion occurring on August 23, 1990. Mr. Wilson's wife, individually and on behalf of her children and the estate, sued National Tank Co. on January 15, 1991. The trial court overruled National Tank Company's objections as to any and all documents prepared prior to October 25, 1990, being the date that National Tank Co. ascertained that it had been sued by one Frank Kroupa, one of the other persons injured in the explosion. In substance then, the investigatory matters were ordered produced and discoverable up until the approximate date that National Tank Co. was sued by Kroupa.

The Supreme Court determined that the attorney-client privilege protects confidential communications made for the purposes of facilitating the giving or the rendition of professional legal services to the client. The opinion describes four important areas of protected privilege in the attorney-client context. TEX.R.CIV.EVID. 503(b). *See* TEX. R.CIV.EVID. 503(a)(4)(i).

After consideration of the attorney-client privilege, the Supreme Court next considered the "work product of an attorney". TEX.R.CIV.P. 166b(3)(a). The court defined "work product" to mean generally specific documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories prepared and assembled in actual anticipation of litigation or for trial. The "work product of the lawyer" also included interviews, memoran-

da, briefs, and other materials prepared with an eye toward litigation.

In passing on the time that privilege is activated, the court reiterated that it was required to determine only whether a reasonable person based on the circumstances existing at the time of the investigation would have anticipated litigation. The requirement in *Flores* that crucial consideration had to be given to outward manifestations which would indicate litigation was imminent was no longer a requirement. The outward manifestations concept was overruled.

Indeed, requiring "outward manifestations" being objective considerations would impair the policy goals of the witness statement privilege and the party communication privileges as well as the attorney-client privilege in some cases. These materials must be produced and prepared in the preparation for litigation or in the preparation for actual trial. And these materials and investigative matters must have been done in good faith and in the good faith belief that litigation would ensue. The court stressed that it was striking a balance between open discovery and the protection of the adversary system, stressing that a party must be free to assemble information about the case and the trial thereof which was free from undue interference from the opposing protagonist.

From this record we deem that the district judge was trying to protect legitimate privileges and also protecting the adversary system. In like manner, we deem this opinion also protects and promotes the adversary process by encouraging ample investigation of the facts by both sides. Nor is discovery unduly thwarted. Nor do we encourage a "Rocket Docket" in Texas courts. This opinion is not meant to disallow correct, non-broad discovery. *See Chapa v. Garcia*, 848 S.W.2d 667 (Tex.1992). The motion for rehearing in *Chapa* was overruled on April 7, 1993.

The granting of the motion for leave to file the application for a writ of mandamus was improvidently granted. The application for the writ of mandamus is denied.

APPLICATION FOR WRIT OF MANDAMUS DENIED.

BURGESS, Justice, dissenting.

I respectfully dissent. I would conditionally grant the mandamus as to the sanctions and abate the remaining portion while directing the trial judge to conduct the *in camera* inspection.

Common sense tells me it is more time effective to have Fieldcrest produce whatever records it has in its possession pertaining to the lawsuits than have relator write to court clerks all over the country and request copies of items already in Fieldcrest's possession. This is not to say the trial judge does not possess or use common sense, but only acknowledges that when an appellate court looks at the matter from a detached perspective, a more reasoned result is possible.

With those observations, I respectfully dissent.