Phillip E. LEWIS, Appellant

v.

FAULKNER REAL ESTATE CORPO-
RATION; Central Retail, LLC; and
Central Retail Outlot, LLC, Appellees.

No. 2009–CA–001224–MR.

Court of Appeals of Kentucky.

June 14, 2013.

Finis R. Price, III, Prospect, KY, for Appellant.

Brian H. Stephenson, Noelle J. Bailey, Louisville, KY, for Appellees.

Before CLAYTON, TAYLOR, and THOMPSON, Judges.

## OPINION

CLAYTON, Judge:

Philip E. Lewis moved for discretionary review of the original decision of the Kentucky Court of Appeals. The Kentucky Supreme Court granted the motion, vacated our original decision, and remanded for our consideration in light of their decision in *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky.2010). The decision was handed down thirteen days after our original decision. For the reasons stated below, we again affirm the trial court's summary judgment.

## FACTS AND PROCEDURAL HISTORY

One day in early June 2007, while walking his dog, Lewis was injured when he stepped into a hole on the retail property of Faulkner Real Estate Corporation, Central Retail, LLC, and Central Retail Outlot, LLC (hereinafter "Faulkner"). Lewis is unable to specifically recall the actual date of the accident but he does remember that it occurred in the early afternoon. On that day, Lewis and his roommate were engaged in conversation as they walked their dogs. Lewis, who was familiar with the area because it was his neighborhood, often walked down this particular street. For some inexplicable reason, Lewis stepped off the sidewalk and into a hole, which ostensibly caused injury to his foot.

Lewis could not provide any reason for stepping off the sidewalk. And he admitted that there was nothing on the sidewalk that obstructed his path and he was not forced to walk off the sidewalk. In fact, he indicated that nothing obstructed his view nor were any other pedestrians walking on the sidewalk. Furthermore, Lewis conveyed that the weather was clear, and he was wearing slide-on sandals. When it happened, he fell forward and landed in the grass on his hands and knees. After a few seconds, he got up and returned home. Lewis did not seek medical attention until the following day.

On June 10, 2008, Lewis filed a complaint in Jefferson Circuit Court alleging negligence on the part of Faulkner. Then, on March 27, 2009, after both written discovery and depositions were conducted, Faulkner filed a motion for summary judgment alleging that because the hole where Lewis fell was an "open and obvious" condition, there were no genuine issues of material fact. On June 3, 2009, the trial court granted Faulkner summary judgment because it concurred with the assess-

ment that the condition was "open and obvious."

Thereafter, Lewis filed an appeal with our court in which he maintained that the trial court erred in granting summary judgment. On August 13, 2010, we affirmed the trial court's grant of summary judgment. Within two weeks of our decision being rendered, however, the Kentucky Supreme Court decided *McIntosh*, which addressed a similar issue. At this juncture, Lewis filed a petition for rehearing with the Court of Appeals because of *McIntosh*. We denied the motion. Next, he filed a motion for discretionary review with the Supreme Court, which was granted, and the case was remanded for further consideration in light of *McIntosh*.

## STANDARD OF REVIEW

On appeal, the standard of review for summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact, and if so, the moving party is entitled to summary judgment as a matter of law. Kentucky Rules of Civil Procedure (CR) 56.03; *Scifres v. Kraft*, 916 S.W.2d 779 (Ky.App. 1996). Moreover, a summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Community Services, Inc.*, 210 S.W.3d 188, 189 (Ky.App.2006), citing *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky.App. 2000).

In reviewing a grant of summary judgment, we, like the trial court, must consider the facts in the light most favorable to the nonmoving party, which in this case would be Lewis. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Keeping this in mind, we consider the salient facts giving rise to Lewis's complaint to determine whether Faulkner has established its right to judgment "with such clarity that there is no

room left for controversy." *Id.* at 482. Furthermore, our analysis will include a consideration of the caselaw found in *McIntosh*.

## ANALYSIS

The issue herein is whether the grant of summary judgment was proper. This case involves a negligence-based premises liability action. In essence, to hold a party liable for negligence under Kentucky law, a party making the claim must demonstrate that the other party owed them a duty, that they breached that duty, that the breach caused an injury to the party claiming negligence and that the party suffered damages. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky.2003)

In our original assessment, we had to discern whether any material fact existed precluding the court's assessment that the condition on the premises was "open and obvious," and, therefore, a complete bar to liability. In that appeal, Lewis argued that the condition of the hole, from his perspective, was not "open and obvious," and thus, Faulkner owed him a duty. Faulkner countered that the condition of the hole was noticeable, and thus, under the "open and obvious" doctrine, it did not owe a duty to warn an invitee.

In Kentucky, the possessor of land has a duty to an invitee to maintain property in a reasonably safe condition. *City of Madisonville v. Poole*, 249 S.W.2d 133, 135 (Ky.1952). The parties do not dispute that Lewis's status on the premises was that of an invitee. Prior to *McIntosh*, the landowner did not have a duty to warn an invitee of conditions that are "open and obvious" to a reasonable person. *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 528 (Ky.1969); *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490, 492 (Ky.App.1999). The term

"obvious" has been explained to mean "that both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence and judgment." *Bonn,* 440 S.W.2d at 529.

The Court has described the invitee's responsibilities as a visitor in the following manner:

> An invitee has a right to assume that the premises he has been invited to use are reasonably safe, but this does not relieve him of the duty to exercise ordinary care for his own safety, nor does it license him to walk blindly into dangers that are obvious, known to him, or would be anticipated by one of ordinary prudence.

*Smith v. Smith,* 441 S.W.2d 165, 166 (Ky. 1969). Hence, under prior caselaw, typically no recovery would be expected by the invitee for conditions known to him or so obvious that the person may reasonably be expected to discover and appreciate the danger. *Sales v. Bradley,* 356 S.W.2d 588 (Ky.1962).

Here, notwithstanding our strict summary judgment standard, in our first review, we were persuaded that the trial court did not err by refusing to submit the case to a jury. In his deposition, Lewis conceded that had he been looking he would have seen the "laptop" size hole, which he described as not obscured. Hence, the hole was "open and obvious," and no liability inured to Faulkner. Thus, at that time, we determined that the trial court properly granted Faulkner summary judgment because no genuine issue of material fact was presented.

As noted above, since our decision, the Supreme Court rendered *McIntosh,* which modified the "open and obvious" doctrine of premise liability. Therein, the Supreme Court held that, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *McIntosh,* 319 S.W.3d at 389, quoting Restatement (Second) of Torts § 343A(1) (1965). It is now our task to address the implications of this decision to the case at bar.

■ To begin, we observe that in *McIntosh,* the Kentucky Supreme Court modified the "open and obvious" doctrine and adopted the modern trend as expressed in the Restatement (Second) of Torts § 343A (1965) regarding open and obvious conditions. Having done so, under Kentucky jurisprudence, the "open and obvious danger" is no longer a complete defense for the landowner but is now limited by the language of the Restatement that "unless the possessor should anticipate the harm despite such knowledge or obviousness." *McIntosh* at 389. In essence, the court noted that under the modern comparative fault doctrine, which has been adopted in Kentucky, a jury should evaluate the comparative fault of the parties in such cases. *Id.*

■ The analysis rests primarily on the concept of foreseeability. First, as a component of comparative fault, it must be ascertained the known or obvious quality of a danger. In the factual scenario here, clearly the hole that Lewis fell into was open and obvious. The grass was cut, it was the size of a laptop, and Lewis readily found it when he returned to the site of his fall. He himself admitted that, had he been looking, he would have seen it.

■ But after *McIntosh,* the analysis does not stop at the mere labeling of a condition as "open an obvious," to obviate the landowner of liability. Thus, the next factor of the comparative fault evaluation is focused on the invitee. The invitee has

a responsibility to pay reasonable attention to his surroundings and notice hazardous conditions. Therefore, under a comparative fault evaluation, a heightened type of danger places a higher duty on invitees to look out for their own safety. Such a condition, being open and obvious, should usually be noticed by an invitee who is paying reasonable attention. In the case at hand, again Lewis admitted, that had he been looking, he would have seen the hole in the ground. Thus, regarding Lewis's obligation to pay attention to his surroundings, again we believe that, even under the reasoning of *McIntosh*, the grant of summary judgment by the trial court was appropriate—Lewis admitted that had he been looking he would have seen the hole.

■ Lastly, having determined that the defect was "open and obvious," and that Lewis was not paying the requisite attention, the question arising from *McIntosh* is whether Faulkner could have foreseen that Lewis would step into the hazard. Hence, the inquiry shifts to whether the invitee was foreseeably distracted by the condition on the sidewalk or a third party pushed him into the danger. The question is reframed to address whether the landowner has an obligation to reduce or eliminate the risk posed by a hazardous condition based on the anticipation of harm. Thus, notwithstanding Lewis's acknowledgment that had he been looking he would have seen the hole, he may still have a case under *McIntosh*. Pursuant to *McIntosh*, it is necessary to see if there was a foreseeable distraction or the intervention of a third party.

■ A comparison of the facts of *McIntosh* and our facts show that Lewis has not presented any viable reason for Faulkner to have an obligation to anticipate any harm. The facts of our case strongly distinguish it from those found in *McIntosh*. Unlike the paramedic in *McIn-*

*tosh*, who tripped over an unmarked curb while rushing a critically ill patient into an emergency room, Lewis stepped off a sidewalk during a leisurely neighborhood stroll. He disclosed familiarity with the area, having walked it often, and admitted he would not have fallen had he been looking. Moreover, Lewis was not confronted with a situation or condition that would have allowed Faulkner to foresee such an injury.

Thus, our review of the case, in light of *McIntosh*, does not change our decision that the trial court's grant of summary judgment was proper, and no change in our original decision is necessary.

## CONCLUSION

After viewing the record in a manner most favorable to Lewis and considering *McIntosh*, we conclude that there were no genuine issues of material fact and that Faulkner was entitled to summary judgment as a matter of law. The record supports the trial court's conclusion that the defect in the pavement was "open and obvious," that Lewis would have seen it if he had been looking, and Faulkner had no reason to anticipate the harm from the hole next to the sidewalk.

For these reasons, we affirm the decision of the Jefferson Circuit Court.

ALL CONCUR.