RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0354-MR

LARISSA PENDLEY                                                      APPELLANT

v.      APPEAL FROM DAVIESS CIRCUIT COURT
        HONORABLE JAY A. WETHINGTON, JUDGE
        ACTION NO. 19-CI-00963

CITY OF OWENSBORO, KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND KAREM, JUDGES.

CALDWELL, JUDGE: Larissa Pendley appeals from a summary judgment

granted in favor of the City of Owensboro, Kentucky on her premises liability

claim. We affirm.

## FACTS

Larissa Pendley (Pendley) attended a conference at the city-owned

Owensboro Convention Center with friends. She, her friends, and others passed

through a well-worn landscaped area rather than using the sidewalk to enter the convention center in the morning.  This landscaped area contained a concrete pad.  A few hours later, along with others, she went through the same landscaped area when going to lunch and suddenly fell.  She suffered injuries from her fall and filed suit against the city and other entities.  Discovery commenced.

According to deposition testimony, Pendley had tripped over the concrete pad's ledge.  Evidence showed that the concrete pad was level with the wood chips and landscaping on the northern ingress side, but the concrete pad was inches higher than the landscaping on the southern egress side.  In other words, one did not have to step up over the pad to go towards the center grounds, but one would have to step up over the pad when leaving the center grounds.

Pendley testified by deposition that she had been watching where she was going and was aware of the concrete pad structure.  She also testified there were no signs warning anyone to stay out of the landscaped area and that she had not perceived the area to be dangerous before her fall.  She admitted she should have just used the sidewalk, but she noted others passed through the same area without incident.

The city filed a motion for summary judgment, arguing *inter alia* that the landscaped area was open and obvious and not unreasonably dangerous.[1] Pendley filed a response, asserting genuine issues of material facts existed and precluded summary judgment. She also argued that even if any hazardous condition was open and obvious, that alone did not entitle the city to summary judgment under recent precedent and a jury should determine any issues of comparative fault.

Following oral argument by the parties' counsel, the trial court granted the city's motion for summary judgment. It perceived that the material facts were not in dispute. It noted the city owned the property at issue and was responsible for its maintenance. It noted that weather conditions were not adverse. It also accepted that Pendley was an invitee though she had elected to cross through the landscaped area rather than using the sidewalk.[2]

---

[1] The city also argued that Pendley's lawsuit was barred by the Claims Against Local Governments Act (CALGA). But the trial court ultimately declined to rule on this argument. We express no opinion on any CALGA issues – particularly as the parties have not argued CALGA issues in their appellate briefs.

[2] The city's counsel orally noted to the trial court that Pendley might be considered a trespasser since she passed through the landscaping area rather than using the sidewalk. But counsel argued the city was entitled to summary judgment even if Pendley was an invitee. The city did not argue that Pendley was a trespasser in its appellee brief or in its written motion for summary judgment. So, for purposes of resolving this appeal, Pendley's status as an invitee appears undisputed and we do not reach any issues about how the city's liability might be affected if she was considered a trespasser.

Without explicitly discussing how one side of the concrete pad was level with the landscaping but the other was not, the trial court summarized that Pendley fell on the concrete pad within the landscaped area. It also noted in its order and judgment her testimony that she was paying attention to where she was going, noticed the concrete pad and did not perceive any danger prior to her fall:

> Plaintiff testified in her deposition that the condition that caused her to trip, the edge of the concrete pad and the landscaping adjacent to the concrete pad, did not appear dangerous to her when she first walked to the entrance of the Owensboro Convention Center on the morning of this incident and traversing the same landscaping. Plaintiff further testified that she would not have walked through and over the concrete slab on the first or second occasion if she had believed the area was dangerous.

The trial court also referred to Pendley testifying that, both while going into and leaving the conference center area via the landscaped area, Pendley looked ahead and "was fully aware that she was walking on a concrete pad surrounded by decorative landscaping but adjacent to the unobstructed sidewalk."

Even construing the evidence in Pendley's favor, the trial court concluded it would be impossible for her to prevail at trial based on recent precedent.[3] It concluded that she could not prove the existence of a dangerous

---

[3] Oddly, the trial court also stated in its conclusions of law: "Here, the condition that caused Plaintiff's injury was not dangerous or hazardous." It is hard to understand how the trial court both concluded that a condition had caused her injury and that the same condition was not dangerous **or** hazardous. Nonetheless, regardless of this perplexing statement, we conclude the trial court properly determined that Pendley could not prove that the city breached a duty based on the record before us and controlling precedent as we later discuss.

condition, emphasizing her testimony that she did not perceive any danger before her fall despite being aware of the concrete pad and landscaping both when entering and exiting the conference center area. It also concluded that the concrete pad surrounded by landscaping was an open and obvious condition which she observed prior to her fall and that the city had done everything reasonable to "segregate foot-traffic from the area." It concluded Pendley could not prove that the city had breached a duty to her, and noted she was aware the concrete pad was surrounded by landscaping but "chose to avoid this barrier." So, it granted summary judgment in favor of the city, and it dismissed Pendley's complaint with prejudice.[4]

---

[4] Since the complaint was dismissed with prejudice and no counterclaims or cross-claims had been filed, the appealed-from order granting summary judgment in the city's favor was a final and appealable judgment since it effectively "adjudicat[ed] all the rights of all the parties in an action or proceeding[.]" Kentucky Rule of Civil Procedure (CR) 54.01.

It does not appear that the other defendants to the action were formally dismissed prior to the appealed-from order granting the city summary judgment and dismissing the complaint. Though the order granting summary judgment for the city states that it is final and appealable, it does not contain a statement that there is no just cause for delay. *See* CR 54.02(1) ("when multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.").

Nonetheless, we are satisfied that the appealed-from order is inherently final and appealable as the dismissal of the complaint with prejudice resolves all claims and rights of all parties in the action, *see* CR 54.01, given the absence of counterclaims or cross-claims here.

# ANALYSIS

## Summary Judgment Standards

We review the trial court's grant of summary judgment *de novo*, keeping in mind the stringent standards governing the trial court in ruling on a summary judgment motion:

> Summary judgment is to be cautiously applied and should not be used as a substitute for trial. Granting a motion for summary judgment is an extraordinary remedy and should only be used to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant. The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists. This review requires the facts be viewed in the light most favorable to the party opposing summary judgment. . . .
> Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a de novo standard of review with no need to defer to the trial court's decision.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013)

(internal quotation marks and footnotes omitted).[5]

---

[5] Based on our review of the record, Pendley clearly preserved the sole issue on appeal for our review in her written response to the city's motion for summary judgment and in oral argument to the trial court. However, the argument portion of Pendley's brief does not begin with the required statement identifying – with citations to the record – if and how her argument was preserved for our review. *See* Kentucky Rules of Appellate Procedure (RAP) 32(A)(4); *see also* former CR 76.12(4)(c)(v) (in effect at time of briefing). We remind counsel of the importance of complying with our appellate rules. "If a party fails to inform the appellate court of where in the record his issue is preserved, the appellate court can treat that issue as unpreserved" meaning it

To ultimately prevail on her negligence claim, Pendley would have to prove the required elements of duty, breach, causation, and damages. *See*, *e.g.*, *Phelps v. Bluegrass Hosp. Management, LLC*, 630 S.W.3d 623, 628 (Ky. 2021). Our Supreme Court has made clear in recent years that owners or possessors of land owe certain duties to invitees regardless of the existence of any open and obvious conditions or hazards. *Shelton*, 413 S.W.3d at 907-08. In such cases, the key question now is not whether a duty exists but whether the defendant breached duties or fulfilled its standard of care. *Id.* at 910-11. And generally, a possessor of land owes invitees a duty to discover unreasonably dangerous conditions on the land and to either eliminate the dangers or warn of them. *McKinley v. Circle K*, 435 S.W.3d 77, 80 (Ky. App. 2014).

In its order granting the city's motion for summary judgment, the trial court did not explicitly state that the city did not owe Pendley any duty. But it concluded Pendley could not show the city "breached its duty to exercise ordinary

reviews the issue solely for palpable error resulting in manifest injustice. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021); *see also* CR 61.02. Furthermore, briefs may be stricken for substantial failure to comply with appellate rules. *See* RAP 31(H)(1); *see also* former CR 76.12(8)(a). Although perhaps it is debatable whether Pendley's brief substantially failed to comply with appellate rules, Pendley's brief also fails to comply with other requirements such as a statement regarding oral argument. *See*, *e.g*., RAP 32(A)(1); former CR 76.12(4)(c)(ii).

care to maintain its premises in a reasonably safe condition."[6]  Pendley contends

the trial court did not properly assess whether there was evidence of a breach of

duty under controlling precedent such as *Shelton*.  And she contends the trial court

erroneously concluded there was no dangerous condition as a matter of law.

Pendley argues in her brief the "uneven concrete pad"[7] was a

dangerous condition "irrespective of its open and obvious nature."  She asserts the

uneven concrete pad caused her to trip and fall and be injured.  And she cites for

our consideration an unpublished opinion which she construes as recognizing that

uneven pavement may be a dangerous condition.[8]

We agree with Pendley's argument that the trial court's statements

indicating that there was no dangerous condition were problematic.  Apparently, it

concluded there was no evidence of a dangerous condition because, despite

allegations of a dangerous condition in her complaint, "her testimony was that the

area did not appear unsafe or present a dangerous condition."  But properly

---

[6] To the extent that the trial court's order could be construed as concluding the city owed no duties to Pendley, this is inconsistent with *Shelton*.  However, that does not mean summary judgment was nonetheless inappropriate under these facts.

[7] Pendley's brief argues the uneven concrete pad was a dangerous condition, but she does not explicitly discuss the trial court's lack of mention of the concrete pad being uneven in its order granting summary judgment.

[8]  *See Embry v. Mac's Convenience Stores, LLC*, No. 2012-CA-000333-MR, 2014 WL 2640240 (Ky. App. Jun. 13, 2014).  This unpublished case is not binding.  RAP 41(A); former CR 76.28(4)(c).

construing the evidence in the light most favorable to the party opposing summary judgment (Pendley), her testimony indicated that she did not perceive the area as dangerous *prior to her fall* – but she did not admit there was no dangerous condition. After all, Pendley, and even the trial court, referred to some condition concerning the area with the concrete pad causing her to trip and fall.

Thus, we cannot agree with the city and the trial court that summary judgment was warranted based on a lack of evidence of a dangerous condition despite their citations to *Phelps*, 630 S.W.3d at 630 (although summary judgment in landowner's favor could not be affirmed based on condition being open and obvious, the summary judgment was affirmed based on lack of evidence of a dangerous condition in the premise). Yet despite any problems with the trial court's stating there was no dangerous condition, it properly concluded Pendley could not show that the city did not breach any duty based on the evidence here – in part based on undisputed evidence that the condition at issue was open and obvious.

Even though a condition may be dangerous, the law recognizes that some open and obvious dangerous conditions are not **unreasonably** dangerous and that landowners do not breach applicable duties under some circumstances when they neither eliminate nor warn of open and obvious dangerous conditions. For example, though stairs might be dangerous because people can fall on them, a

building containing stairs is often not considered unreasonably dangerous because the risk is obvious, so people know to take precautions without being warned. *See Shelton*, 413 S.W.3d at 914 (danger posed by open and obvious conditions like stairs and potholes may not be considered an unreasonable danger; "the condition is a warning in itself and places the plaintiff on the same level of knowledge about the premises as the land-possessor defendant"). Specifically, recent Kentucky precedent adopting Section 343 of the Restatement (Second) of Torts indicates a breach of duty by the landowner cannot be found for an open and obvious hazardous condition unless there is evidence of a reason to anticipate harm despite the obviousness of the hazard:

> According to the Restatement, a possessor of land is subject to liability when he fails to protect his invitees from harm, despite the condition's open-and-obvious nature, because he should have anticipated that harm would result. But a possessor of land is simply not liable to his invitees for physical harm caused to them by any condition on the premises whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge or obviousness. Read together, as called for by the Restatement (Second), Section 343 outlines the general standard of care applicable to invitors; and Section 343A serves as an acknowledgment that under certain limited circumstances, negligence will not be present. In other words, Section 343A suspends liability when the danger is known or obvious to the invitee, *unless* the invitor should anticipate or foresee harm resulting from the condition despite its obviousness or despite the invitee's knowledge of the condition.

-10-

*Shelton*, 413 S.W.3d at 911 (internal quotation marks and footnotes omitted).

Our Supreme Court opined that issues about the foreseeability of harm despite an open and obvious condition are normally jury questions. And it recognized that questions of foreseeability of harm are just one factor for the jury to consider in determining if the landowner defendant fulfilled its standard of care. *Shelton*, 413 S.W.3d at 914. Nonetheless, summary judgment is not necessarily precluded especially if there are no genuine issues of material fact, or the plaintiff could not possibly prove all elements of negligence – such as breach of duty – even construing the evidence in his/her favor. *Id*. at 916.

Pendley correctly asserts that the city owed a duty of care to invitees. And based on photographs or other evidence showing the landscaped area was well worn, she reasonably argues that the city should have known that pedestrians frequently cut through the area. She also points out that there were no signs stating keep off the landscaping and no signs stating any warnings.

Yet while there may be evidence that pedestrian use was foreseeable and that no signs with warnings were posted, Pendley does not point to any evidence that **harm** should be anticipated despite the obviousness of the concrete pad drop-off. As the trial court noted, Pendley admitted seeing the concrete structure and landscaping when passing through earlier that morning and she points to no evidence that her view of the concrete pad and ledge was obstructed.

She does not point to any evidence of factors causing pedestrians not to pay attention when crossing through the area or that harm should be anticipated despite the obviousness of the drop-off at one edge of the concrete pad.  And a curb or other drop-off in concrete or pavement is often open and obvious especially if nothing obstructs one's view.  *See generally Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010); *see also Dishman v. C & R Asphalt, LLC*, 460 S.W.3d 341, 347 (Ky. App. 2014) (noting trial court's regarding the drop in pavement or uneven ground in construction area of store parking lot – albeit with some barricades and caution tape – as an "incredibly open and obvious" hazard).[9]

Kentucky precedent recognizes that despite the existence of duties, summary judgment in favor of the landowner is not necessarily precluded – especially where there is no genuine issue of material fact or where the plaintiff/invitee has not offered evidence to support all requirements of a negligence claim.  *See Shelton*, 413 S.W.3d at 916.  For example, this Court affirmed a summary judgment in a landowner's favor where the hazard was open and obvious (an unobscured laptop-sized hole in the ground), the plaintiff was familiar with the area and admitted he would not have stepped into the hole if he had been paying attention, and the plaintiff presented no evidence of any reason to

---

[9] *See also Embry*, 2014 WL 2640240, at *6 (approving trial court conclusion that unevenness or sudden drop-off in pavement was an open and obvious condition).

anticipate that passersby would be distracted or would suffer injury from the obvious hole. *See Lewis v. Faulkner Real Estate Corp.*, 403 S.W.3d 64, 68 (Ky. App. 2013). And we noted invitees have an obligation to pay reasonable attention to their surroundings to discover and avoid dangerous conditions. *See id*. at 67-68. We contrasted the facts in *Lewis* with *McIntosh*, 319 S.W.3d 385 – as in *McIntosh*, there was evidence to support anticipating harm despite the obviousness of a potentially hazardous condition:

> A comparison of the facts of *McIntosh* and our facts show that Lewis has not presented any viable reason for Faulkner to have an obligation to anticipate any harm. The facts of our case strongly distinguish it from those found in *McIntosh*. Unlike the paramedic in *McIntosh*, who tripped over an unmarked curb while rushing a critically ill patient into an emergency room, Lewis stepped off a sidewalk during a leisurely neighborhood stroll. He disclosed familiarity with the area, having walked it often, and admitted he would not have fallen had he been looking. Moreover, Lewis was not confronted with a situation or condition that would have allowed Faulkner to foresee such an injury.

*Lewis*, 403 S.W.3d at 68.

In the instant case, Pendley had not passed through the landscaped area on numerous occasions, but she had crossed over it at least once before her fall and she admitted being aware of the concrete pad and landscaping. Normally any danger posed by a curb or sudden drop in pavement is open and obvious and no harm would be anticipated unless there is evidence of a reason to assume one

could not focus on looking at the ground or would proceed despite perceiving the risk – such as a paramedic's needing to focus on a critically ill patient rather than carefully stepping over a curb in a hospital emergency entrance in *McIntosh*. *See* 319 S.W.3d at 393-94. But Pendley has not pointed to any evidence the city should have foreseen that people passing through the area would not pay attention to their surroundings or that they might proceed despite an obvious risk to accomplish a critical task. *See also Shelton*, 413 S.W.3d at 917 (reasonably foreseeable that hospital patient's wife would proceed to comfort or care for him despite obvious risk of wires by bed because advantages of providing comfort and care would outweigh the risks). Furthermore, unlike the plaintiffs in *Shelton* or *McIntosh* who had no alternative but to proceed through the obviously dangerous area in order to provide care for others, the evidence here indisputably showed that Pendley could have simply used the adjacent sidewalk, rather than passing through the landscaped area with the uneven concrete pad, for access to and from the conference center.

Based on the record here, the trial court correctly concluded that there was nothing to support a finding of breach of duty. In this action the city provided an alternative means of access, the hazardous condition of the landscaped area with the uneven concrete pad was open and obvious, and there was no evidence presented of reasons to presume that people passing through would be distracted or

would proceed despite being aware of the obvious risks. Though our reasoning may differ somewhat from the trial court's,[10] we conclude that the trial court reached the proper result in granting summary judgment based on the record before us, so we affirm. *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

## CONCLUSION

We affirm the Daviess Circuit Court's judgment.

ALL CONCUR.

---

[10] The trial court's written order indicated that it relied on our opinion in *Hoskins v. City of Barbourville*, No. 2019-CA-1622-MR, 2021 WL 3935361 (Ky. App. Sep. 3, 2021) (unpublished). But the trial court orally stated it favored the dissent's opinion in that case at a hearing. The trial court noted the Supreme Court had granted discretionary review, but it had not yet issued an opinion when the trial court issued its order granting summary judgment. Our Supreme Court later reversed our decision on premises liability and reinstated the trial court's summary judgment for the landowner in *City of Barbourville v. Hoskins*, 655 S.W.3d 137 (Ky. 2022). Specifically, the Supreme Court determined that the trial court correctly concluded "the sun-heated walkways at the water park were not an unreasonably dangerous condition." *Id.* at 142.

The trial court also indicated it relied on *Phelp*s, 630 S.W.3d 623 – in which summary judgment for the defendant was affirmed due to lack of evidence of a dangerous condition. *Id*. at 630. Again, we cannot agree that there was no evidence of any dangerous condition here.

Lastly, the trial court also indicated it relied on *Dishman*, 460 S.W.3d 341. *Dishman*'s facts are very different from the instant case since the defendant had put up barricades and caution tape – thus, taking affirmative steps to warn or to keep people out of a potentially dangerous area and making it much more likely that a passer-by would be "able to avoid the drop-off in the pavement" if paying attention. *See id*. at 347. Yet despite factual differences, we conclude that summary judgment was properly granted here as it was in *Dishman* and in *Lewis* given the lack of evidence of a reason to foresee harm despite the obviousness of the danger.

-15-

BRIEF FOR APPELLANT:

Thomas E. Springer, III
Madisonville, Kentucky

BRIEF FOR APPELLEE:

James A. Sigler
M. Jared Sigler
Paducah, Kentucky