For the reasons expressed in *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, No. 2011–SC–000554–DG, 2013 WL 6134212 (Ky. Nov. 21, 2013), I concur in result only as this truly was a fall caused by a "hidden defect" and thus, would have been protected from application of the "open and obvious" danger rule anyway, were it still the law. *See Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 368–70 (Ky.2005); *see also Estep v. B.F. Saul Real Estate Inv. Trust*, 843 S.W.2d 911 (Ky.Ct.App.1992). Thus, I would stay with the old rule and, thus, concur in result only.

CUNNINGHAM, J., joins.

Wilma Jean SHELTON, Appellant

v.

KENTUCKY EASTER SEALS SOCIETY, INC., Appellee.

No. 2011–SC–000554–DG.

Supreme Court of Kentucky.

Nov. 21, 2013.

As Corrected Nov. 25, 2013.

Joseph T. Pepper, Louisville, George Stephen Schuhmann, Louisville, Counsel for appellant.

Gregory Kerr Jenkins, Allison Marie Helsinger, Melissa Ann Wilson, Lexington, Counsel for Appellee.

Kevin Crosby Burke, Louisville, Counsel for Amicus Curiae, Kentucky Justice Association.

Opinion of the Court by Chief Justice MINTON.

While tending to her husband during his stay in Cardinal Hill Rehabilitation Hospital,[1] Wilma Jean Shelton became entangled in some wires strung along the side of his bed and fell, fracturing her kneecap. She later filed this personal injury action against Cardinal Hill, but the trial court dismissed her claim on summary judgment. The trial court reasoned that Cardinal Hill owed no duty of care to Shelton because the wires were an open-and-obvious condition. The Court of Appeals affirmed the trial court's grant of summary judgment but ruled before we rendered our decision in *Kentucky River Medical Center v. McIntosh.*[2] We granted discretionary review and remanded the case to the Court of Appeals for reconsideration in light of *McIntosh.* The Court of Appeals again affirmed the trial court's dismissal. This appeal followed. We granted discretionary review to examine and clarify the impact of the modifications to Kentucky premises-liability law announced in *McIntosh.*

Because we disagree with the result and the analytical approach taken by the Court

1. The Appellant, Easter Seals Society, Inc., owns and operates Cardinal Hill Rehabilitation Hospital. We refer to the Appellant as "Cardinal Hill" throughout this opinion.

2. 319 S.W.3d 385 (Ky.2010).

of Appeals, we must now reverse. The opinion of the Court of Appeals retreated from the positive and progressive steps begun in *McIntosh* by applying principles rooted in the bygone era of contributory negligence. And the Court of Appeals reached its result using a foreseeability and duty analysis—an approach we recognize as having widespread application in our precedent—that we find confusing and incompatible with modern tort law trends.

We alter the analysis performed in this and future cases of this sort such that a court no longer makes a no-duty determination but, rather, makes a no-breach determination, dismissing a claim on summary judgment or directed verdict when there is no negligence as a matter of law, the plaintiff having failed to show a breach of the applicable duty of care. This approach places the reasonable-foreseeability analysis where it belongs—in the hands of the fact-finders, the jury. This approach continues Kentucky's, along with a growing number of states', slow, yet steady, progress to modernize our tort law and eliminate unfair obstacles to the presentation of legitimate claims. And this approach brings transparency and consistency to the decision-making and reasoning of Kentucky's judges.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

On the day she fell, Shelton visited her husband, Charles, a stroke victim, at Cardinal Hill, where he had been a patient for nearly five weeks. Cardinal Hill is, as its name suggests, an inpatient hospital that provides care for physical rehabilitation needs and medically complex patients.

Over the course of her husband's stay, Shelton visited him daily and performed various acts associated with his care. Shelton developed a routine of approaching her husband's bed and kissing him goodbye when it was time for her to leave him.

Shelton concedes that during these visits she was aware of the various wires, cables, and cords that extended out from the right side of her husband's bed to the wall. The bed was placed such that the only path of approach was the right side, the side where the cords were located. Shelton testified that she "tried to avoid" and "be careful of" the cords. And Shelton's daughter testified that she complained to Cardinal Hill about the hazard created by the cords:

> I had made mention—when a nurse was in the room I was like well why do all these cords have to be on the floor, they all go to different things which I understand that but it is a rehabilitation center, there are people walking around on walkers, that's the last thing they would need to have there especially since my stepdad, he's paralyzed on the left side, [it's] not the safest environment.

Just before she fell, Shelton applied a soothing cream to her husband's back, and then, per her routine, she bent over to kiss him goodbye before leaving for the night. As she turned to leave his bedside, her ankle became entangled in the cords; and she fell onto her knees and hands. Shelton's husband and daughter witnessed the fall and called for help. Shelton suffered a fracture of the lower third of the patella on her left knee. This personal injury action followed.

In the complaint initiating this case, Shelton contended that Cardinal Hill breached its duty to exercise reasonable care in maintaining its facility in a reasonably safe manner because of the cords being strung as they were. The trial court granted Cardinal Hill's motion for summary judgment, reasoning that these cords were an open-and-obvious hazard; and, as a result, Cardinal Hill owed no duty to

Shelton. The Court of Appeals affirmed the trial court. Less than a month later, we rendered *McIntosh.* We granted Shelton's motion for discretionary review and summarily remanded this case to the Court of Appeals to reconsider its holding in light of *McIntosh.* Again, the Court of Appeals affirmed the trial court's summary judgment for Cardinal Hill, holding that Shelton was unable to provide evidence that would justify imposing a duty upon Cardinal Hill to protect Shelton from the open-and-obvious hazard. We granted discretionary review for a second time. We reverse.

## II. ANALYSIS.

Shelton argues that the courts below wrongly applied *McIntosh* by merely labeling the wire hazard as obvious and then denying recovery. Shelton's main contention is that the focus should be on the foreseeability of the harm, not the obviousness of the danger. Accordingly, it is Shelton's position the trial court erred by granting summary judgment to Cardinal Hill because a jury was not allowed to compare the relative fault of the parties at issue. We agree, but for more nuanced reasons.

■ We must first begin by reviewing the standards to be used when handling summary judgment. Summary judgment is to be "cautiously applied and should not be used as a substitute for trial."[3] Granting a motion for summary judgment is an extraordinary remedy and should only be used "to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant."[4] The trial court must review the evidence, not to resolve any issue of fact, but to discover whether a real fact issue exists.[5] This review requires the facts be viewed in the light most favorable to the party opposing summary judgment.[6] Here, the facts must be viewed in a light most favorable to Shelton.

■ Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists.[7] So we operate under a de novo standard of review with no need to defer to the trial court's decision.[8] The facts developed thus far in the litigation are undisputed. Traditionally, the remaining issue in this case would be framed as whether under these facts, as a matter of law, Cardinal Hill had a duty to either warn or remind Shelton of the obvious hazard or to eliminate the risk it posed. But, the question at the heart of this case is better framed as whether, as a matter of law, Cardinal Hill, an invitor, completely satisfied the duty of care it indisputably owed to Shelton, an invitee. Reframing the question in this way focuses the inquiry not on whether a duty *existed,* but whether the existing duty was *fulfilled.* Our jurisprudence is littered with exam-

---

3. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 483 (Ky.1991).

4. *Id.* (quoting *Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 256 (Ky.1985)). "Impossible" is to be used in "a practical sense, not in an absolute sense." *Perkins v. Hausladen,* 828 S.W.2d 652, 654 (Ky.1992).

5. *Id.* at 480.

6. *Id.*

7. *Davis v. Scott,* 320 S.W.3d 87, 90 (Ky.2010) (citing *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer Dist.,* 174 S.W.3d 440, 445 (Ky.2005)). The determination of whether a dispute regarding a material issue of fact exists does not constitute fact finding.

8. *Id.*

ples of fact-specific no-duty determinations. But today we embark on a path that, in our view, will lead to greater clarity in this area of Kentucky's tort law.

### A. Premises Liability and the Open–and–Obvious Doctrine Following *Mcintosh.*

■ The adoption of comparative negligence in the seminal case of *Hilen v. Hays*[9] did not alter the requisite elements of a prima facie negligence claim. As a result of the holding in *Hilen v. Hays*, Kentucky became a pure comparative-fault state; but under comparative fault a plaintiff must still prove the defendant owed a duty to the plaintiff, breached that duty, and consequent injury followed.[10] The evolution from contributory negligence to comparative fault focused on the method in which fault is allocated but did not alter the substantive law surrounding what duties are owed by a defendant.[11] Comparative fault did alter the status of the plaintiff because the plaintiff may now recover despite being partially at fault for his injuries. With that evolutionary process firmly in mind, this Court can no longer perpetuate the flawed methodology that lingers in our conventional application of the open-and-obvious doctrine.

An open and obvious condition is one in which the danger is known or obvious. The plaintiff knows of a condition when she is aware, "not only ... of the existence of the condition or activity itself, but also appreciate[s] ... the danger it involves."[12] And the condition is *obvious* when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."[13] Unlike in *Dick's Sporting Goods v. Webb*,[14] a case we also render today, the wires in this case were clearly open and obvious. Shelton was subjectively aware of the risk posed by the wires. And, objectively, a reasonable person in Shelton's position would recognize the risk.

Traditionally, the open-and-obvious doctrine stated, "land possessors cannot be held liable to invitees who are injured by open and obvious dangers."[15] As a result, if a plaintiff was injured by an open and obvious hazard, the landowner, regardless of any negligent conduct on its part, had a complete defense to any asserted liability. But, in *McIntosh*, we noted that a growing majority of states has moved "away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions"[16] and, instead, adopted the Restatement (Second) of Torts's approach to allow the jury to assess comparative fault.

---

9. 673 S.W.2d 713 (Ky.1984).

10. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky.2003). Traditional legal education emphasizes four elements of negligence: duty, breach, causation, and injury. In Kentucky, "[c]onsequent injury consists of what hornbooks separate into two distinct elements: actual injury or harm to the plaintiff *and* legal causation between the defendant's breach and the plaintiff's injury." (internal quotation marks and citations omitted). *Id.* at 88–89.

11. *See Henson v. Klein*, 319 S.W.3d 413, 422 (Ky.2010).

12. Restatement (Second) of Torts § 343A(1) cmt. b (1965).

13. *Id.*

14. No. 2011–SC–000518, 413 S.W.3d 891, 2013 WL 6134186 (Ky. November 21, 2013).

15. *McIntosh*, 319 S.W.3d at 388 (citing Restatement (First) of Torts § 340 (1934)).

16. *Id.* at 389.

A target for criticism for well over fifty years, the open-and-obvious doctrine persists in our jurisprudence. In *McIntosh*, we took steps to ameliorate the harsh effect of the open-and-obvious doctrine for injured persons seeking recovery. We adopted the Restatement (Second) of Torts Section 343A and held that "lower courts should not merely label a danger as 'obvious' and then deny recovery. Rather [the courts] must ask whether the land possessor could reasonably foresee that an invitee would be injured by the danger." [17] According to Section 343A, harm to the invitee is reasonably foreseeable despite the obviousness of the condition "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it" and, also, "where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." [18] Under this modern approach to cases dealing with open-and-obvious dangers, there is no duty for the land possessor to warn of the dangers; but this "does not mean there is no duty at all[.]" [19] Indeed, "even where the condition is open and obvious, a landowner's duty to maintain property in a reasonably safe condition is not obviated[.]" [20]

Unfortunately, we did not speak clearly enough in *McIntosh*; and we now face squarely the confusion it produced. *McIntosh* was undeniably a step forward in the development of our tort law, but our holding regrettably allowed the obtuse no-duty determination to survive. The issue we attempted to address in *McIntosh* was whether the existence of an open and obvious danger was a legal question of duty or a factual question of fault. A close reading of *McIntosh* indicates that we decided the existence of an open-and-obvious danger went to the issue of duty.[21] Today's case presents us with an opportunity to clarify *McIntosh* and emphasize that the existence of an open and obvious danger does not pertain to the existence of duty. Instead, Section 343A involves a factual determination relating to causation, fault, or breach but simply does not relate to duty. Certainly, at the very least, a land possessor's general duty of care is not eliminated because of the obviousness of the danger.

## B. The Duty Determination.

We now endeavor to illuminate what we intended with our decision in *McIntosh*

17. *Id.* at 392.

18. *Id.* at 389–90.

19. *Id.* at 393.

20. *Id.*

21. *See id.* at 393 ("Turning to this case, this Court concludes that the Hospital owed a duty to Mcintosh. This conclusion is based on our adherence to the Restatement (Second) approach to open and obvious dangers, . . . as well as our continued belief that the most important factor in determining whether a duty exists is foreseeability.") (internal quotation marks omitted); *see also id.* at 394 ("The dire need to rush critically ill patients through the emergency room entrance should be self-evident, and as such, the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. This is another reason this injury is foreseeable and that a duty existed in this case.") (internal quotation marks and citation omitted); *id.* at 390 ("The modern approach is consistent with Kentucky's focus on foreseeability in its analysis of whether or not a defendant has a duty. . . . That harm from an open and obvious danger can sometimes be foreseeable suggests that there should be some remaining duty on the land possessor.").

and how Restatement (Second) of Torts Section 343A does not shield a possessor of land from liability because a duty does not extend to the plaintiff but, rather, because the possessor acted reasonably under the circumstances or the open-and-obvious condition did not cause the resultant harm.

Essentially, the existence of the element of duty is clear because of the landowner-invitee relationship and the general duty of reasonable care applicable to landowners; but there are certain circumstances where liability can be limited, not because a duty does not exist but because there is no negligence—no breach—as a matter of law. Accordingly, the analysis we now apply proceeds this way:

1) Along with the defendant's general duty of care, the defendant's duty is outlined by the relationship between the parties. E.g., an invitor has a duty to maintain the premises in a reasonably safe condition in anticipation of the invitee's arrival.

2) Was the duty breached?

AND

3) Is the defendant's liability limited to some degree by the plaintiffs comparative negligence?

Practically speaking, this analysis will almost always begin with the breach question, given the broad sweep of the general duty of reasonable care. The case before us today is no exception.

The determination of whether a duty exists is a legal question for the court. In determining whether a duty exists, the court makes a policy decision.[22] This policy decision is often not a "sophisticated weighing of probabilities" but "a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct."[23] As such, in our negligence law, the duty determination is better suited for large categories of cases rather than specific circumstances. But, in determining duty, Kentucky case law has generally held that foreseeability, despite being a concept that operates antithetically to broad determinations, is "[t]he most important factor in determining whether a duty exists[.]"[24]

First and foremost, a land possessor is subject to the general duty of reasonable care. "The concept of liability for negligence expresses a universal duty owed by all to all."[25] And "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury."[26] Of course, possessors of land are not required to ensure the safety of individuals invited onto their land; but possessors of land are required to maintain the premises in a reasonably safe condition.[27]

**22.** *Mullins v. Commonwealth,* 839 S.W.2d 245, 248 (Ky.1992).

**23.** *James v. Meow Media, Inc.,* 300 F.3d 683, 691 (6th Cir.2002); *see also* DAVID J. LEIBSON, 13 KENTUCKY PRACTICE TORT LAW § 10:3 (2013 ed.) (noting that a court must decide if the "injury which the plaintiff received, and the personal interest of the plaintiff invaded, is worthy of protection against the alleged conduct of the defendant").

**24.** *Pathways,* 113 S.W.3d at 89 (citing LEIBSON, § 10:3).

**25.** *Gas Service Co. v. City of London,* 687 S.W.2d 144, 148 (Ky.1985).

**26.** *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell,* 736 S.W.2d 328, 332 (Ky.1987); *see also Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99, 102 (N.Y.App.1928) (Andrews, J., dissenting) ("Due care is a duty imposed on each one of us to protect society from unnecessary danger, not to protect A, B, or C alone.").

**27.** *Scuddy Coal Co. v. Couch,* 274 S.W.2d 388, 390 (Ky.1954). *See also* DAN B. DOBBS, ET AL., THE LAW OF TORTS § 276 (2d ed. updated 2013)

In addition, Kentucky law remains steadfast in its adherence to the traditional notion that duty is associated with the status of the injured party as an invitee, licensee, or trespasser.[28] While the distinctions between the first two classifications are often minor and unclear, an invitee is generally defined as one who "enters upon the premises at the express or implied invitation of the owner or occupant on behalf of mutual interest to them both, or in connection with the business of the owner or occupant."[29] Generally speaking, a possessor of land owes a duty to an invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them.[30]

Turning to the circumstances presented in this case, it is clear that Cardinal Hill's relationship with Shelton imposed a duty on Cardinal Hill. Shelton's husband, as a patient there, was himself an invitee. And Shelton came almost daily to be with him and assist with his rehabilitation. As a visitor to another who is engaging in business with the invitor, Shelton is considered an invitee under the law.[31] Moreover, Cardinal Hill encour-

("The landowner owes to the invitee a nondelegable duty of care to make conditions on the land reasonably safe.... In some cases but not all, reasonable care under the circumstances requires an inspection of the premises and active steps to make them safe. In other cases, the landowner may satisfy his duty of reasonable care by providing a warning.") (internal citations omitted); *see also* WILLIAM PROSSER & W. PAGE KEETON, PROSSER & KEETON ON TORTS § 61 (5th ed. 1984) ("The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm.").

28. *See Perry v. Williamson*, 824 S.W.2d 869, 875 (Ky.1992). A reasonable reading of *Perry* would support, at least arguably, abandoning status-based duties and replacing with simply the duty of reasonable care given the circumstances. "The duty owed by the person in possession of land to others whose presence might reasonably be anticipated, is the duty to exercise reasonable care in the circumstances. The traditional classifications, 'trespasser,' licensee' and 'invitee,' are simply convenient classifications for defining certain basic assumptions appropriate to the duty of the party in possession in the circumstances." *Id. See also Hardin v. Harris*, 507 S.W.2d 172, 175–76 (Ky.1974) ("In such a case whether the person injured was an invitee or licensee should not have any bearing upon the standard of care required of the possessor of the premises. His duty in either event was to conduct his activities with reasonable care for

the safety of the appellant."). The abandonment of status-based distinctions for entrants to land—a concept which nearly half of the states have adopted in some form—would be consistent with the Restatement (Third) of Torts approach, which simply delineates between "flagrant trespassers" and "entrants." *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 51 cmt. a (2012) ("[W]ith the evolution of a general duty of reasonable care to avoid physical harm ..., the status-based duties for land possessors are not in harmony with modern tort law."). Although we do not adopt this approach today, mainly because this case is easily decided without crossing that threshold, we do find it important to note that this Court has previously expressed, at the very least, interest in ridding our case law of the often nebulous and inconsistent process of assigning a plaintiff a particular status. As the law stands currently, a landowner has a general duty to maintain the premises in a reasonably safe manner; and the scope of that duty is outlined according to the status of the plaintiff.

29. *Scuddy Coal Co.*, 274 S.W.2d at 390.

30. *McIntosh*, 319 S.W.3d at 388.

31. *See* RESTATEMENT (SECOND) OF TORTS § 332 cmt. g (1965); *Mackey v. Allen*, 396 S.W.2d 55, 58 (Ky.1965) ("We are inclined to regard [Mackey] as a business invitee of the clinic, because her visit to the premises was 'for the convenience or arose out of the necessities' of another person who definitely was in the clinic for purposes of the possessor's business[.]").

ages family members to visit and participate, even including them as a member of the "treatment team" for various disabling conditions for which Cardinal Hill offers services.[32] It almost goes without saying that Shelton was on the premises in connection with the business of Cardinal Hill and, therefore, an invitee. As a result, Cardinal Hill owed to Shelton not only a general duty of reasonable care, but also the more specific duty associated with the landowner-invitee relationship. This is as far as the duty analysis needs to go. There can be little doubt that Cardinal Hill owed a duty of care to Shelton given the circumstances. And with this initial finding, we can, using Section 343A of the Restatement (Second), turn to whether or not Cardinal Hill breached that duty, rather than making a no-duty determination.

## C. The New Approach to the Open-and-Obvious Doctrine and the Proper Role for Restatement (Second) of Torts Section 343A.

The core of not only this case, but the entire line of open-and-obvious cases, is located outside the duty analysis. Traditionally, a defendant's liability would be excused because the court would determine the defendant did not owe a duty to the plaintiff because of the obviousness condition. This is the procedure seemingly promoted by *McIntosh* with Section 343A. At the very least, *McIntosh* did not discourage the practice because it has continued without interruption. While this approach has been widespread, we believe it to be flawed.

A defendant's absolution from liability for a plaintiff's failure to take notice of and avoid an open and obvious danger is a concept long entrenched in our jurisprudence. Unfortunately, the discussion surrounding this principle has often, if not always, overlooked the applicable standard of care. The existence of a duty has been the focus of courts when facing claims of this nature and is, too often, dispositive. We write today to shift the focus away from duty to the question of whether the defendant has fulfilled the relevant standard of care. To label the open-and-obvious doctrine's continued spotlight on duty as a vestige of contributory negligence is compelling but not essential to our understanding. Both the open-and-obvious doctrine and contributory negligence seemingly target the conduct of the plaintiff in determining whether liability for the defendant should attach. But we find it important to point out that when the open-and-obvious doctrine relieves a defendant of liability, it is not because damages are not recoverable as a matter of policy (as the case with contributory negligence). Instead, the defendant is not liable because he has satisfied the standard of care in the given factual scenario. In attempting to be faithful to precedent, courts, including this Court, have muddied the water and confused the issues. *McIntosh* was the first step in clearing the confusion, and today we advance our progress.

---

**32.** *See* www.cardinalhill.org/chrh (last visited July 24, 2013). Under "spinal cord injury," "brain injury," "stroke," and "amputation" Cardinal Hill states that "[f]amily members are included in the treatment team, and we encourage active family participation as the patient works to achieve functional goals." *See, e.g.,* www.cardinalhill.org/chrh/services/brain-injury?phpMyAdmin='YDxzV–5pvT42EB1q0KU9WmKnO2 (last visited July 24,

2013). Further, under Cardinal Hill's Orthopedic Program (found by clicking "joint replacements" on Cardinal Hill's homepage), family members are considered an "essential part of the treatment team, and their involvement is vital to the patient's success in rehabilitation." http://www.cardinalhill.org/chrh/services/joint-replacement?phpMyAdmin=Vo2CYDxzV–5pvT42EB1q0KU9WmKnO2 (last visited July 24, 2013) (emphasis added).

The Restatement, in its various iterations, has been central in the development of modern Kentucky tort law and this Court has repeatedly cited it with approval. The Restatement (Second) forms the foundation of our holding in *McIntosh*. As a result, it is appropriate to view the Restatement as the background for our current open-and-obvious jurisprudence. In doing so, it is important to understand and compare Kentucky's traditional tort law with the language of the Restatement.

A standard of care, rather than a duty, is expressed in the Restatement.[33] This is evidenced by the Restatement's use of "subject to liability" rather than any mention of a legal duty or obligation. Essentially, Section 343 of the Restatement (Second) of Torts pertaining to the general standard of care for invitors closely tracks the language used in Kentucky case law.[34] Undeniably, as outlined above, a possessor of land owes to invitees a duty of reasonable care. According to the Restatement, a possessor of land is "subject to liability" when he fails to protect his invitees from harm, despite the condition's open-and-obvious nature, because he should have anticipated that harm would result. But a possessor of land is simply "not liable to his invitees for physical harm caused to them by any condition on the premises whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge or obviousness."[35] Read together, as called for by the Restatement (Second), Section 343 outlines the general standard of care applicable to invitors; and Section 343A serves as an acknowledgment that under certain limited circumstances, negligence will not be present.[36] In other words, Section 343A suspends liability when the danger is known or obvious to the invitee, *unless* the invitor should anticipate or foresee harm resulting from the condition despite its obviousness or despite the invitee's knowledge of the condition. The Restatement does not support a no-duty determination.

Accordingly, an open-and-obvious condition does not eliminate a landowner's duty. Rather, in the event that the defendant is shielded from liability, it is because the defendant fulfilled its duty of care and nothing further is required. The obviousness of the condition is a "circumstance" to be factored under the standard of care. No liability is imposed when the defendant is deemed to have acted reasonably under the given circumstances. So a more precise statement of the law would be that a landowner's duty to exercise reasonable care or warn of or eliminate unreasonable dangers is not breached. "When courts say the defendant owed no duty, they usually mean only that the defendant owed no

---

33. *See Lugo v. Ameritech Corp.*, 464 Mich. 512, 629 N.W.2d 384, 393 (2001) (Cavanagh, J., concurring) ("The second imperative point to understand about Restatement §§ 343 and 343A is that they refer to the imposition of liability; they do not discuss whether a duty exists.").

34. *See Bartley v. Educational Training Systems, Inc.*, 134 S.W.3d 612, 615 (Ky.2004) (citing § 343 with approval). Section 343 states, "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
   (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
   (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
   (c) fails to exercise reasonable care to protect them against the danger."

35. *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 528 (Ky.1969).

36. *See Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 367–68 (Ky.2005) (reading Sections 343 and 343A together).

duty *that was breached* or that he owed no duty *that was relevant on the facts.*[37] And without breach, there can be no negligence as a matter of law.[38]

We have reached this conclusion after carefully considering the role foreseeability plays in our jurisdiction's duty analysis. In previous open-and-obvious cases, because the question of duty is a question of law, we have also treated the foreseeability of harm as a question of law. As a result, especially when cases are before courts on motion for summary judgment, courts are left in "the peculiar position ... of deciding questions, as a matter of law, that are uniquely rooted in the facts and circumstances of a particular case and in the reasonability of the defendant's response to those facts and circumstances."[39] Too often, in our opinion as a result of the factual nature of foreseeability, when deciding the duty issue, courts identify the existing duty in fact-specific statements.[40] "An attempt to equate the concept of 'duty' with such specific details of conduct is unwise, because a fact-specific discussion of duty conflates the issue with the concepts of breach and causation."[41]

In open-and-obvious cases, especially, complication often arises "because it is all too easy to confuse a finding for the defendant on the facts of a particular case with a rule of law for all cases"; and "[i]n some particular cases, the obviousness of danger is compelling, so that the court might take the case from the jury by directed verdict or summary judgment."[42] Furthermore, a no-duty determination creates a perception that the plaintiff was contributorily negligent.[43] As a result, the true reasoning behind the summary judgment—no breach

---

**37.** DAN B. DOBBS, THE LAW OF TORTS § 227, p. 579 (2001).

**38.** *See Foster v. Costco Wholesale Corp.,* 291 P.3d 150 (Nev.2012) (adopting the same approach we adopt here and noting that a judgment as a matter of law is appropriate if at least one of the elements of negligence is negated).

**39.** *A.W. v. Lancaster County School District 0001,* 280 Neb. 205, 784 N.W.2d 907, 914 (2010); *see* DOBBS, ET AL., THE LAW OF TORTS § 253 (2d ed. updated 2013) ("The most coherent way of using the term duty states a rule or standard of law rather than a conclusion about the defendant's breach of duty on the particular facts.").

**40.** A good example of how the duty analysis swallows up questions of fact can be found in *Pathways.* In that case the Court found that the defendant "owed a duty to Hammons to use the current list of registered boarding homes circulated to it by the Department of Health when Royse searched for a boarding home that would accept Hammons." *Pathways,* 113 S.W.3d at 91. The Court was then left to "assume that Pathways breached this duty" because the duty analysis was so fact-intensive that there was no analysis left to do

for breach. Surely a duty should not be expressed in such minute detail. Instead, Pathways had a duty of reasonable care and breached that duty by failing to use the current list of registered boarding homes. Taking foreseeability out of the duty analysis, at least in premises-liability cases, would eliminate this effect and render duty decisions more coherent and transparent.

**41.** *Gipson v. Kasey,* 214 Ariz. 141, 150 P.3d 228, 230–31 (2007).

**42.** DOBBS, ET AL., THE LAW OF TORTS § 276 (2d ed. updated 2013).

**43.** A no-duty determination places the focus on the conduct of the plaintiff, which is improper in a comparative fault regime. *See Gipson,* 150 P.3d at 230–31 ("[A] conclusion that no duty exists is equivalent to a rule that, for certain categories of cases, defendants may not be held accountable for damages they carelessly cause, no matter how unreasonable their conduct."); RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 51 (2010) ("The rule that land possessors owe no duty with regard to open and obvious dangers sits more comfortably—if not entirely congruently—with the older rule of contributory negligence as a bar to recovery.").

by the defendant—is obfuscated.[44]

▮ In the present case, the no-duty determination supported by the lower courts gives the impression that "the court's decision is separate from and antecedent to the issue of negligence."[45] "The extent of foreseeable risk" at the time of the defendant's alleged negligence "depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter."[46] It is important to note that whether a duty of care exists is a wholly different and distinct concept from whether a standard of care, typically that of reasonable or ordinary care, is met or satisfied.[47] One is a purely legal question, grounded in social policy, while the other is inherently fact-intensive, grounded in

44. "Simply put, whether a duty exists is a *policy* decision, and a lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination." *A.W.*, 784 N.W.2d at 916. *See also* John C.P. Goldberg 85 Benjamin C. Zipursky, *The Restatement (Third) and the Place of Duty in Negligence Law*, 54 VAND. L.REV. 657, 716–17 (2001) ("[J]udicial decisions referring to matter-of-law decisions as 'duty' decisions necessarily confuse the distinct issue of duty in its obligation sense with the breach issue. And this confusion imposes a cost not only on legal academics and students, but also on lawyers and judges trying to litigate and resolve negligence cases. Moreover, it permits judges unwittingly to slide into the habit of taking negligence cases away from the jury through the simple expedient of re-framing breach questions for the jury as duty questions for the court."); Maija Liisa Varda, *Torts: Childproofing the Gate to Landowner Liability: How Judges Misuse the Concept of Foreseeability to Keep Cases From the Jury—Foss ex rel. Foss v. Kincade*, 36 WM. MITCHELL L.REV. 354, 385 (2009) ("No-duty rulings due to the lack of foreseeability create precedent that is worthless at best, and downright unintelligible at worst.").

45. RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 7 cmt. i (2010). We agree with the Restatement (Third) that determinations of no-duty should be reserved for "exceptional cases" where "articulated policies or principles" support the limiting of liability for a particular class of actors. *Id.* at cmt. j. It is important to point out that despite his concern for the future of Kentucky law under the approach we adopt today, J. Cunningham's dissenting opinion illustrates a paradigm for when articulated policy or principles would limit the liability of a particular class of actors. In his opinion, J. Cunningham argues that a passerby has no duty to attempt to rescue a drowning victim but they do have foreseeability. Foreseeability alone does not create a duty. Under the law, an affirmative duty to rescue has never been imposed absent a relationship between the parties. *See Grimes v. Hettinger*, 566 S.W.2d 769, 775 (Ky. App.1978) ("Under the traditional common law rule, a person is under no duty to attempt to rescue another person who he knows to be in danger of drowning. Decisions holding that there is no liability for permitting a person to drown have been described as 'revolting to any moral sense.' Without regard to the merits of the general rule, a duty to aid one in peril has been imposed when a special relationship exists between the parties.") (internal citations omitted). Accordingly, cases of the nature described by J. Cunningham allow a no-duty determination. This is because, in those very limited situations, an individual is under *no duty* to take affirmative action, and acting reasonably does not require jumping into the water to save the drowning individual, even if he does "swim like Michael Phelps," as J. Cunningham argues. There may be a moral obligation, but it has long been the case that there is no *legal* obligation. Refusing to impose a duty in the situation articulated by J. Cunningham is an example of the type of categorical policy question that the duty analysis is designed to solve. Open-and-obvious cases are not such cases, because there is a duty. That duty does not vanish simply because the risk of harm is more noticeable to the plaintiff than normal.

46. *A.W.*, 784 N.W.2d at 917.

47. *See Gipson*, 150 P.3d at 230.

common sense and conduct acceptable to the particular community. Accordingly, the foreseeability of the risk of harm should be a question normally left to the jury under the breach analysis.[48] In doing so, the foreseeability of harm becomes a factor for the jury to determine what was required by the defendant in fulfilling the applicable standard of care.

As discussed above, a landowner has a duty to an invitee to eliminate or warn of unreasonable risks of harm. In *McIntosh*, we adopted the factors listed in Section 343A of the Restatement (Second) where a defendant may be found liable despite the obviousness of the danger. To recap, those factors are: when a defendant has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered, or fail to protect himself against it; and when a defendant has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. These factors dovetail with what constitutes an unreasonable risk.

An unreasonable risk is one that is "recognized by a reasonable person in similar circumstances as a risk that should be avoided or minimized" or one that is "in fact recognized as such by the particular defendant." [49] Put another way, "[a] risk is not unreasonable if a reasonable person in the defendant's shoes would not take action to minimize or avoid the risk." [50] Normally, an open-and-obvious danger may not create an unreasonable risk. Examples of this may include a small pothole in the parking lot of a shopping mall; steep stairs leading to a place of business; or perhaps even a simple curb. But when a condition creates an unreasonable risk, that is when a defendant "should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger[,]" liability may be imposed on the defendant as a breach of the requisite duty to the invitee depending on the circumstances.[51]

A certain amount of residual risk that may require more than a simple warning is created when a risk is unreasonable. Remember, the open-and-obvious doctrine only eliminates a defendant's duty to *warn* because the condition is a warning in itself and places the plaintiff on the same level of knowledge about the premises as the land-possessor defendant.[52] But if the cir-

**48.** *See* DOBBS, ET AL., THE LAW OF TORTS § 159 (2d ed. updated 2013) ("Reasonable foreseeability of harm is instead a judgment call.... [T]he question of what is or is not foreseeable to a reasonable person in the position of the defendant is normally a jury question, part of its overall evaluation of the defendant's conduct[.]").

**49.** DOBBS, THE LAW OF TORTS § 143, p. 335 (2001).

**50.** *Id.* at p. 336. *See also North Hardin Developers, Inc. v. Corkran by Corkran*, 839 S.W.2d 258, 261–62 (Ky.1992) ("Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another.... Those against which the actor is required to take precautions are those which society, in general, considers sufficiently great to demand them. No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.") (quoting WILLIAM L. PROSSER, LAW OF TORTS § 31 (4th ed.1978)).

**51.** *See McIntosh*, 319 S.W.3d at 389 (quoting RESTATEMENT (SECOND) OF TORTS § 343A(1) (1965)).

**52.** "Implicit in the open and obvious doctrine, however, is the assumption that the warning provided by the open and obvious nature of the danger is by itself sufficient to

cumstances are such that the risk remains despite the warning provided by the condition itself, *i.e.*, it is foreseeable that the invitee will forget about the danger, the situation is akin to a latent danger.[53] And latent dangers, those that are unknown to the invitee, enable the landowner to be subjected to liability if reasonable care is not exercised.[54] The doctrine does not completely negate a defendant's duty such that if a warning was inadequate because the risk is so great, breach could not be found. To allow the doctrine to eliminate a landowner's general duty of reasonable care would do great violence to this state's development of a modern tort regime.

This approach is completely consistent with the result reached by this Court in *McIntosh*. In *McIntosh*, we held that the hospital's motions for summary judgment and judgment notwithstanding the verdict were appropriately denied. Mcintosh, a paramedic, tripped over a curb, unique in both location and size, as she rushed a patient into the hospital. The entrance used by McIntosh was the emergency en-

trance where paramedics routinely bring patients suffering a myriad of traumas. It cannot reasonably be argued that the hospital did not owe McIntosh a duty and, in point of fact, the Court held such. The *McIntosh* Court determined that a reasonable juror could find the defendant hospital certainly had reason to foresee that an individual entering the hospital through that entrance would be distracted and forget or fail to notice the condition, *i.e.* the unusually placed curb, and that either the curb should have been eliminated or some other precaution should have been taken to eliminate or more adequately warn of the hazard. And, as the court found, it was certainly foreseeable that Mcintosh, as a paramedic, would proceed despite the risk posed by the curb. When viewed through the lens of breach, this analysis does not involve the specific fact-intensive duties[55] that are produced when foreseeability remains a part of the duty analysis. Instead, we are left with a coherent picture of the factual circumstances and any potential liability for the defendant.

relieve the property owner of its duty to protect visitors from dangerous conditions on the property." *Papadopoulos v. Target Corp.*, 457 Mass. 368, 930 N.E.2d 142, 151 (2010).

**53.** *See Hanson v. Town & Country Shopping Center, Inc.*, 259 Iowa 542, 144 N.W.2d 870, 873 (Iowa 1966) (noting that an open or obvious defect might be the equivalent of a trap or pitfall simply because the possessor should be cognizant that the invitee would have no reason to anticipate it, appreciate the hazard, or guard against it).

**54.** *See* Restatement (Second) of Torts § 343. "Some courts have held that defects in premises that are in no way latent, but upon observation could be classified as open and obvious, may be of such a nature that a possessor should know that an invitee would not anticipate or guard against them in using the premises within the scope of his invitation. Therefore, 'to arbitrarily deny liability for open and obvious defects' and, at the same time, impose liability only for hidden defects ... is to

adopt a rigid rule based on objective classification in place of the concept of reasonable care under the ... circumstances." Jacqueline L. Hourigan, *Negligence—Premises Liability—Where Hazardous Condition is of an Open and Obvious Nature, Premises Owner Retains Duty to Warn of Unreasonable Risk. Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 537 N.W.2d 185 (1995), Casenote, 73 U. Det. Mercy L.Rev. 613, 620 (Spring 1996).

**55.** *See Pathways*, 113 S.W.3d at 89; *see also Marshall v. Burger King Corp.*, 222 Ill.2d 422, 305 Ill.Dec. 897, 856 N.E.2d 1048, 1061 (2006) ("Courts could, after all, state an infinite number of duties if they spoke in highly particular terms, and while particularized statements of duty may be comprehensible, they use the term duty to state conclusions about the facts of particular cases, not as a general standard."); *Thing v. La Chusa*, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814, 830 (1989) (noting that "there are clear judicial days on which a court can foresee forever[.]").

It is important to emphasize that summary judgment remains a viable concept under this approach. The court's basic analysis remains the same because, on a motion for summary judgment, a court must still examine each element of negligence in order to determine the legitimacy of the claim. But the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one.[56] This correctly "examines the defendant's conduct, not in terms of whether it had a 'duty' to take particular actions, but instead in terms of whether its conduct *breached* its duty to exercise the care" required as a possessor of land.[57] If reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation, summary judgment is still avail-able to a landowner.[58] And when no questions of material fact exist or when only one reasonable conclusion can be reached, the litigation may still be terminated.[59] This approach does not leave landowners defenseless against an onslaught of litigation, although we sincerely doubt we will see any increase in litigation because of this approach.

Furthermore, with our recommitment to a very stringent standard for summary judgment in *Steelvest* and the rejection of the much more lenient federal standard, we expressed our support for a policy that summary judgment is not to be used as a defense mechanism.[60] Instead, summary judgment is to be cautiously employed for cases where there is no legitimate claim under the law and it would be impossible to assert one given the facts. Legitimate

---

**56.** W. Jonathan Cardi, *Purging Foreseeability: The New Vision of Duty and Judicial Power in the Proposed Restatement (Third) of Torts*, 58 Vand. L.Rev. 739, 778 (2005) ("Thus, the proper forum for judicial consideration of risk-foreseeability is in the context of breach, pursuant to the deferential 'no reasonable jury' standard.").

**57.** *A.W.*, 784 N.W.2d at 917.

**58.** *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 7 cmt. i (2010) ("Sometimes reasonable minds cannot differ about whether an actor exercised reasonable care.... In such cases, courts take the question of negligence away from the jury and determine that the party was or was not negligent as a matter of law. Courts sometimes inaptly express this result in terms of duty. Here, the rubric of duty inaccurately conveys the impression that the court's decision is separate from and antecedent to the issue of negligence. In fact, these cases merely reflect the onesidedness of the facts bearing on negligence, and they should not be misunderstood as cases involving exemption from or modification of the ordinary duty of reasonable care.").

**59.** See *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (Ky.1987); *O.K. Tire Store No. 3, Inc. v. Sto-vall*, 392 S.W.2d 43, 44 (Ky.1965); *Adkins v. Greyhound Corp.*, 357 S.W.2d 860, 862 (Ky. 1962).

**60.** Kentucky jurisprudence is clear that the role of the jury is held in high esteem and should not be limited except in clear circumstances. In *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382 (Ky.1985), we expressed this view accordingly:

> The more judges take cases away from juries, the more the concepts of reasonable conduct, negligence and gross negligence become synonymous with the view of the judge or judges on that court. Likewise, the more the interpretative power is delegated to juries, the more these concepts become the aggregate of discrete findings by juries.... The role of the jury in interpreting the evidence and finding the ultimate facts is an American tradition so fundamental as to merit constitutional recognition.... The conscience of the community speaks through the verdict of the jury, not the judge's view of the evidence. It may well be that deciding when to take a case away from the jury is a matter of degree, a line drawn in the sand, but this is all the more reason why the judiciary should be careful not to overstep the line.

*Id.* at 385 (internal citations omitted).

claims should be allowed to proceed to a jury. And we should not fear jury determinations. Admittedly, juries may be unpredictable; but relatively recent studies show that juries usually reach the same conclusion a judge would have reached had the judge decided the case as a matter of law.[61] Indeed, according to one study, in 78 percent of cases judges would have ruled the same as juries, with the main reason for disagreement being the judge would have imposed liability where the jury did not.[62] As our tort law has progressed, we have stated through numerous decisions that plaintiffs should not be barred from bringing legitimate claims. The approach we adopt today, adopted in a number of other states, continues this policy.

Our action today should not be viewed as a major change in our law. The questions are not changing, their locations are. "To say, as we have in the past, that a defendant had no duty, under particular circumstances, to foresee a particular harm is really no different from saying that the defendant's duty to take reasonable care was not breached, under those circumstances, by its failure to foresee the unforeseeable."[63]

▇▇ Applying this approach to the present case, we reverse the Court of Appeals because there remains a question of material fact regarding whether Cardinal Hill properly fulfilled its duty of reasonable care. The record has not been adequately developed regarding any alternative solutions, warnings, or precautions that Cardinal Hill could have taken in maintaining reasonably safe premises to prevent Shelton's injury. Further, a reasonable juror could determine that Cardinal Hill had reason to foresee that Shelton would proceed to encounter the wires because the advantage of doing so outweighed the risk. To Shelton, her "compassion for her husband" outweighed the risk presented by the visible wires. Indeed, as previously mentioned, rehabilitative facilities such as Cardinal Hill often encourage family and friends who visit patients to walk with them, sit with them, and otherwise interact with them. This participation is routinely cited as a critical component to the pace of a patient's recovery. Furthermore, the bed of Shelton's husband was positioned in such a way that Shelton was faced with the choice of either encountering the wires or not approaching her husband's bedside to care for him or kiss him.

The approach we adopt today and its application to this case should not be read to say that hospitals must somehow alter their conduct in a manner that is antithetical to their purpose, the treatment of

**61.** DOBBS, ET AL., THE LAW OF TORTS § 21 (2d. ed. updated 2013) (dispelling the notion that the jury is a lawless threat by highlighting actual studies showing juries tend to reach the same result the judge would have reached in a particular case). *See also* Kevin M. Clermont & Theodore Eisenberg, *Trial by Jury or Judge: Transcending Empiricism*, 77 CORNELL L.REV. 1124 (1992); Michael J. Saks, *Public Opinion About the Civil Jury: Can Reality Be Found in the Elusions?*, 48 DEPAUL L.REV. 221 (1998); Valerie P. Hans, *The Elusions and Realities of Jurors' Treatment of Corporate Defendants*, 48 DePaul L.Rev. 327 (1998).

**62.** *See* Valerie P. Hans, *The Jury's Response to Business and Corporate Wrongdoing*, 52 LAW & CONTEMP. PROBLEMS 177, 183–84 (Autumn 1989) (citing HARRY KALVEN, JR. & HANS ZEISEL, THE AMERICAN JURY p. 53, Table 12 (criminal trials); p. 63, Table 16 (civil trials) (1971)); *see, e.g.,* VALERIE P. HANS & NEIL VIDMAR, *The Verdict on Juries*, 91 Judicature 227 (No. 5 March–April 2008); ERIC HELLAND & ALEXANDER TABARROK (*JUDGE AND JURY: AMERICAN TORT LAW ON TRIAL*) (2006).

**63.** *A.W.,* 784 N.W.2d at 918.

the patient.[64]  We are entirely sympathetic to the notion that a hospital should not be required to place the safety of a visitor over the welfare of its patient.  There must be a weighing of the burden of eliminating the risk with the harm posed.  In the situation presented, the harm posed by the cords must be weighed with the burden of relocating, moving, or otherwise corralling the cords that caused Shelton's fall and subsequent injury.  Here, that weighing involves a review of the potential effect on the proper care or health of Cardinal Hill's patients versus the risk of potential harm.  The greater the burden of eliminating the risk, the greater the risk of harm must be.

If evidence is produced showing that the wires were arranged in the only manner that enabled Cardinal Hill to care properly for Mr. Shelton, especially in the face of an emergency situation, such as a code, then it cannot be said that the duty of reasonable care has been breached.  Under those circumstances, Cardinal Hill would have done everything reasonably possible.  But if evidence is produced that the wires could have been handled in a different manner, one in which Cardinal Hill could still respond appropriately to its patient's needs, summary judgment is not appropriate because a reasonable juror could find that the duty of reasonable care was breached.

In the end, what most would term a victory may prove problematic for Shelton because a jury could find she was predominantly at fault. Of course, Shelton is subject to a duty of reasonable care and must act reasonably under the given circumstances.  But even if Shelton has breached her duty and acted unreasonably, under a comparative fault regime her claim is no less legitimate and her breach is not sufficient for granting summary judgment. Accordingly, viewing the evidence in the light most favorable to Shelton, we conclude that genuine issues of material fact preclude summary judgment, because material facts remain regarding whether Cardinal Hill exercised reasonable care.

### III.  CONCLUSION.

We reverse the Court of Appeals and remand the case for further proceedings because Cardinal Hill had a duty to Shelton and there remains a question of material fact whether that duty was breached or not.  The approach we embrace in this opinion brings Kentucky even further into the modern era of tort law and takes one more step in our journey toward a fairer system less burdened by vestiges of contributory negligence.  We may walk slowly in the law, but we should never walk backward.[65]  Perpetuating the confusion engendered by the open-and-obvious doctrine would be a step backward.

All sitting.

---

**64.**  This is not a novel concept in the annals of our jurisprudence. In *Bonn*, the Court noted that it could not "be reasonably considered that Sears was negligent in not having guardrails around the pits (when occupied by the cars), because it is a matter of common knowledge that service operations on an automobile could not conveniently be carried on with a guardrail surrounding the automobile." *Bonn*, 440 S.W.2d at 529. The hospital wires at issue are similar. We are not requiring Cardinal Hill, or any other hospital or care facility, to act in dissonance with their purpose.  A business, especially one so intimately linked with the health of our neighbors, family members, and friends, should not be required to use precautions that make the effectuation of their purpose significantly more difficult or impossible.

**65.**  "I walk slowly, but I never walk backward."  Attributed to Abraham Lincoln.  87 Cong. Rec. 7479 (1941) (statement of Rep. Everett M. Dirksen).

ABRAMSON, KELLER, and NOBLE, JJ., concur. CUNNINGHAM, J., dissents by separate opinion in which SCOTT, J., joins; and SCOTT, J., dissents by separate opinion in which CUNNINGHAM and VENTERS, JJ., join.

CUNNINGHAM, J., Dissenting.

I concur completely with Justice Scott's well-stated dissent in this case. I only write further to express my own concerns for the direction our Court is taking here today in the area of slip and fall cases.

I strongly oppose the abandonment of our open and obvious standard for determining the duty of property owners. As Justice Scott states, such a result has very disturbing ramifications. The cost of health care in hospitals, rehabilitation centers—and even nursing homes—will be affected as insurance premiums rise. Naturally, this cost is going to be passed on to the consumer. More importantly, such a rule of law will compel these health care providers to adopt and impose much more restrictive visitation policies upon visitors to the infirmed. This will extract a poignant and emotional toll upon our sick and their loved ones.

Contrary to the reasoning in *McIntosh* and the expressions of this opinion, the principle of "open and obvious" is not "rooted in the bygone era of contributory negligence." It is rooted in the basic tort requirement of duty—or more accurately, the lack of duty. In the case of *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526 (Ky.1969), a patron fell into a grease pit when purchasing a boat battery. The Court, in holding that the pit was a usual and necessary condition to the business of an automobile service station, stated: "It was well lighted. It was open and obvious. Therefore, it is our conclusion that so far as this plaintiff is concerned, Sears *breached no duty* owed to him which was caus-

ative of the harm he suffered." *Id.* at 529 (emphasis added).

Without a duty, we never look at foreseeability. Neither do we look at breach or ordinary care. These terms do not come into play without duty. A pedestrian walking past a lake may observe a drowning person in the water. Under our law, as it stands, that person has no duty to attempt to rescue the hapless victim. But he or she surely has foreseeability—the person is going to drown. If the pedestrian swims like Michael Phelps, ordinary care demands that a rescue be attempted. But there is no duty. So there is no tort.

The overarching concern I have for our departure from the open and obvious protection is not for the landlord business. Landlords can take care of themselves. And they will always pass their costs along to the consumer. I'm concerned about the elderly person on a fixed income still being able to get a hamburger at Wendy's for less than five dollars, and our sick and infirmed still being able to get needed health care at affordable insurance rates. Also, it is my desire that such persons still be allowed to receive the comforting, reassuring and unrestricted hands of loved ones in the hospital rooms where they lay infirmed and suffering. We fool ourselves when we think that the landowner is going to carry the brunt of the financial and human cost in relaxing the open and obvious principle.

Therefore, I respectfully dissent.

SCOTT, J., joins.

SCOTT, J., Dissenting.

I must respectfully dissent. In doing so, however, I acknowledge that the majority of my colleagues are following the national common law trend in matters such as this. Yet, I cannot follow because I believe this trend establishes an impractical and un-

wise rule of law and will be bad for Kentucky.

In so doing, I realize my final dissent in these cases (one of which I concurred in result only with) is now more akin to a eulogy for the former doctrine of "open and obvious" dangers than a real effort to turn the majority at this time; yet, I have tried. Nevertheless, I must write what I feel for a doctrine that I believe has served America's judges, litigants, and courtrooms aptly for many years.

It was a doctrine that was based on personal responsibility and common sense; yet, one that was unforgiving of inattention, forgetfulness, or risky conduct. Still, it protected those whose distractions were warranted, as well as those who could not reasonably perceive the real danger around or underlying what they could see. *Horne v. Precision Cars of Lexington, Inc.*, 170 S.W.3d 364, 368–70 (Ky.2005). Simply put, it was a doctrine crafted within the perceptions of the Americans of its time: a doctrine that negated the considerable time and expense of litigation in cases that otherwise generally could not have been won in front of the juries of the day, and a doctrine that kept property liability insurance premiums within its confines. It was a doctrine whose lifetime spanned the greatest opportunity and economic growth this nation has ever known. It was not the cause of this growth, personal responsibility was—but it did play its part along with many, many other factors of our social, economic, and political structures of the time. As this Court has recognized,

> [i]n all societies, there is a line, or a "seam," between appropriate conduct and inappropriate conduct. Sometimes it is a broad line, sometimes thin. This line, or "seam," is defined or established by law. And by our interpretive rulings, this court can more clearly define, or inadvertently obscure, or even move the line, or "seam," characterizing conduct in our society. Thus, we should always realize that every ruling we make, or "seam" we define, obscure, or adjust, has a composite effect, however large or small, on the "efficiency" of the society we live in.

*Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 479 (Ky.2006).

We move this "line or seam" today by departing from the long-tested rule of "open and obvious" dangers to a now full-blown rule of comparative fault. In doing so, we move to a rule that focuses primarily on a premises owner's duty to keep a premises safe regardless of the obviousness of the danger, weather, or the predominant needs of the premises owner for the rendering of its services—in this instance, Cardinal Hill Rehabilitation Hospital.

Granted, the majority acknowledges that trial courts may still grant summary judgment under their new standards if "reasonable minds cannot differ or it would be unreasonable for a jury to find [a premises owner's] breach or causation." Yet, the problem I see in the application of this new rule—compared to the old "open and obvious" danger rule—is that the factual and legal standard for early termination of such litigation is now much higher although the value of any ultimate recovery will, in the main, remain low due to the comparative fault of the plaintiff.

Still, because the standard for termination is now more difficult, many of these cases will proceed on to trial with the concomitant increase in litigation costs and expenses for both sides; not to mention the furthering rise in premises liability policy premiums which are always passed on to consumers or any changes in "visitor policies" medical care facilities, like Cardinal Hill, may now choose to implement per insurance demands or self-protection.

And, on the plaintiff's side, the financial burden for the majority of these cases I fear will fall on relatively young, inexperienced plaintiff's attorneys who may wrongly believe that juries have changed their focus on causation just because we have.

Oh well, no more peanut shells on the steakhouse floor! *Johnson v. Lone Star Steakhouse & Saloon of Kentucky, Inc.*, 997 S.W.2d 490 (Ky.App.1999). Notably, I dissent.

CUNNINGHAM and VENTERS, JJ., join.