OPINION OF THE COURT BY JUSTICE CUNNINGHAM
Appellants, Joe Daugherty and Kim Adleta, are partners in the horse trade. They market horses for sale at Daugherty Stables in Whitley City, Kentucky. On May 30, 2011, Appellee Bobbi Tabor, a prospective horse buyer, contacted Adleta on the horse-trading website "Horsetopia Classifieds" about purchasing several horses from Daugherty Stables. Tabor was interested in finding at least four horses for her then-boyfriend, Dr. Mario Tremblay, to buy. She wanted one for herself, one for Dr. Tremblay, and the other two for his daughters.
On June 3, 2011, Tabor and Dr. Tremblay visited Daugherty Stables to test-ride horses. Among other prospects, the couple considered a Tennessee Walking Horse named Flash. Tabor successfully rode three or four other horses that day prior to Flash. Initially, a stable employee rode Flash for ten to fifteen minutes to warm Flash up and demonstrate that he was broken. Afterward, Dr. Tremblay rode Flash without incident, although he stated that the horse was "riding rough." He then suggested that Tabor should ride Flash.
Conflicting facts exist after Tabor mounted Flash and began to lose control of the horse. Flash raced back toward the barn. According to Tabor, Daugherty and Daugherty Stables' employees attempted to flag down Flash by waving their arms, which Tabor claims caused the horse to change course and gallop toward the woods in a frenzy. Additionally, Tabor argues that she only had the skill of a beginner horse rider and that Daugherty neglected to assess whether she had the ability to ride a horse like Flash.
Daugherty claims that Tabor lost control of Flash and did not take proper action behind the reins to halt him. Daugherty claims to have walked toward Flash after Tabor lost control but refutes that he or his employees waved their arms or tried to corner Flash in any way. He also states that Tabor held herself out to be an experienced gaited horse rider to himself and Adleta. As stated previously, she rode three or four horses that day before riding *321 Flash. Notably, Flash was a tamed horse without any prior propensity for spirited behavior. Thus, Daugherty claims he reasonably determined that Tabor would be able to handle riding Flash.
Notwithstanding the factual disputes, Tabor ultimately lost control of Flash and was thrown from the horse as he sped toward the woods. She suffered two broken vertebrae, broken ribs, a fractured hip, and an injured shoulder.
On May 31, 2012, Tabor filed suit against Appellants, seeking compensation for her injuries, which she claims resulted from Appellants' alleged breach of their duties under the Farm Animals Activity Act ("FAAA"). Appellants moved for summary judgment, arguing that, as farm animal activity professionals, they satisfied the FAAA's mandate to warn participants about the inherent dangers of horseback riding. Appellants claimed they had the statutorily-required warning signs posted at Daugherty Stables and had assessed Tabor's skill level before permitting her to ride.
On December 10, 2015, the trial court granted summary judgment in Appellants' favor. Tabor appealed to the Kentucky Court of Appeals. The Court of Appeals reversed the trial court and remanded for further findings of fact. Specifically, the court found that Daugherty and Daugherty Stables had a duty to make a reasonable and prudent inquiry into Tabor's ability to manage Flash before letting her ride the horse. The court held that a jury could reasonably find that Dr. Tremblay's alleged statement about Flash "riding rough," as well as Tabor's alleged question whether Flash was a good horse for a beginner, should have put Daugherty on notice that Tabor did not have sufficient experience to ride Flash.
Additionally, the court held that a genuine issue of fact exists regarding Tabor's allegation that Daugherty and his workers waved their arms at Flash, thereby causing the horse to jolt for the woods and unseat her. The court held that while the statute abrogates liability for injuries resulting from the inherent dangers of farm animals, Daugherty may be liable if he or his workers recklessly or wantonly waved at Flash and in so doing caused Tabor's injuries.
Thus, the Court of Appeals reversed the McCreary Circuit Court's grant of summary judgment. However, the Court of Appeals agreed that Appellants' lack of records regarding Flash's subsequent sale and other business records were not grounds for granting summary judgment in Tabor's favor. Through initial discovery, Tabor had become aware of Flash's whereabouts and was able to have the horse's temperament examined if she so chose. Appellants sought discretionary review before this Court, which we granted.
Analysis
This Court reviews a trial court's decision whether to grant a summary judgment motion de novo. Shelton v. Kentucky Easter Seals Soc'y, Inc., 413 S.W.3d 901, 905 (Ky. 2013). When considering whether to grant summary judgment, a trial court must view the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Steelvest, Inc. v. Scansteel Serv. Ctr., Inc., 807 S.W.2d 476, 480 (Ky. 1991).
The inherent risks associated with farm animals are beyond the reasonable control of farm animal activity professionals like Appellants. KRS 247.402(1). However, there are instances where farm animal activity professionals have duties to prevent injury and limit liability. These statutory duties include posting warning signs, making *322 sure prospective riders are reasonably suited for riding the farm animals, and refraining from negligent, willful, or wanton acts that cause the participant's injury. KRS 247.4027(1) - (3) ; KRS 247.402(2)(b) ; KRS 247.402(2)(d)-(e). Here, the farm animal activity professionals were required to post the statutorily-required warning signs, as well as make a reasonable and prudent inquiry into Tabor's ability to manage riding Flash.
It is undisputed that Daugherty posted the Kentucky Equine Liability warning sign at Daugherty Stables, as required by the FAAA. Additionally, there were no prior indications that Flash was a dangerous or untamed horse unsuitable for riding. Thus, the crux of Tabor's case depends upon: (1) whether Appellants satisfied their duty to ensure that Tabor had the requisite skill to ride Flash; and (2) whether the actions of Daugherty and his stable hands were reasonable under the FAAA.
The FAAA's standard for reasonableness in assessing a rider's ability is whether the farm animal professional "determine[d] the ability of the participant to engage safely in the farm animal activity and to safely manage the particular farm animal based on the participant's representations of the participant's ability ...." KRS 247.402(2)(b) (emphasis added). From the outset, Tabor represented herself to Appellants as an experienced rider. For instance, when corresponding with Adleta about her riding skill and the types of horses she was looking for, Tabor-under the username "trendycowgirl42"-answered Adleta's question about going trail riding with her:
Yes, riding for sure! Can't wait! I will go with you as often as I can. I use [sic] to own a spotted mare ... She was awesome on the trails, it was just the field that I had problems with ... But I loved her speed ... She was 18 mph easy before she crossed over to a pace. I am older now and not as eager to go that fast but I do like to know I can go if I want to. So [sic] like I said, two of the horses can be advanced. The other [sic] need to be beginners. Can't wait to horse talk with you. Funny thing is if people don't have a gaited horse, I tend to tune them out!
Adleta claims that she and Tabor also had numerous telephone conversations about horse riding and horse culture prior to the accident.
While at the stable, Tabor continued to hold herself out to be an experienced rider. She expressed interest in purchasing a gaited trail-riding horse like Flash and successfully rode several other horses before choosing to ride Flash. Thus, although Tabor stated in deposition testimony that she had exaggerated her abilities, Appellants reasonably determined that Flash was suitable for Tabor to ride based upon her multiple representations.
Next, we must assess whether Appellants allegedly waving their arms at Flash warrants liability under the FAAA. The Court of Appeals held that if Daugherty or his farm hands had been waving their arms, it might have created liability because they should have known sudden movements can startle a horse. However, the FAAA states the "inherent risks of farm animal activities" includes, among other factors, "[t]he unpredictability of the reaction of a farm animal to sounds, sudden movements, and unfamiliar ... persons...." KRS 247.4015(9)(b).
Therefore, it was inappropriate for the Court of Appeals to contradict the statute and suggest liability for allegedly raising or waving one's arms, as the statute includes "sudden movements" within the definition of "inherent risks of farm animal activities" assumed by farm animal activity participants like Tabor. Consequently, no genuine issue of material fact exists as to *323 Appellants' liability under the statute. Even if Daugherty or his stable hands had raised or waved their arms in an attempt to halt the charging horse, liability for their arm-raising-or for Flash's unpredictable reaction to Tabor, for that matter-is abrogated by the FAAA. Any exception for the alleged sudden movements of Daugherty or his farm hands would swallow up the rule. Moreover, the record is devoid of any evidence that raising one's arms to try to stop a run-away horse or redirect it from an open barn is unreasonable.
Conclusion
For the reasons stated herein, we hereby reverse the decision of the Court of Appeals.
All sitting.
All concur.