RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0067-DG

KEENELAND ASSOCIATION, INC.                                    APPELLANT


V.                ON REVIEW FROM COURT OF APPEALS
                            NO. 2018-CA-1393
          FAYETTE CIRCUIT COURT NO. 17-CI-03068


ROY J. PRATHER AND                                            APPELLEES
NANCY PRATHER

AND

2020-SC-0075-DG


SALLEE HORSE VANS, INC.                                        APPELLANT


V.                ON REVIEW FROM COURT OF APPEALS
                            NO. 2018-CA-1393
          FAYETTE CIRCUIT COURT NO. 17-CI-03068


ROY J. PRATHER AND                                            APPELLEES
NANCY PRATHER


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>REVERSING</u>**

During the 2016 September Yearling Sale at Keeneland, a horse broke

loose from its handler and headed toward pedestrians who were crossing a

path between barns.  One pedestrian, Roy J. Prather, fell while attempting to

flee and fractured his shoulder.  Prather and his wife, Nancy Prather, filed suit in Fayette Circuit Court alleging various negligence claims against Keeneland and Sallee Horse Vans, Inc., the transportation company that agreed with the horse's purchaser to transport it to its destination.  Keeneland and Sallee argued that the Prathers' claims were barred by Kentucky Revised Statute (KRS) 247.402, a provision of the Farm Animals Activity Act (FAAA) that limits the liability of farm animal activity sponsors and other persons as to claims for injuries that occur while engaged in farm animal activity.

Finding the FAAA applicable, the trial court granted summary judgment in favor of Keeneland and Sallee.  On appeal, the Court of Appeals raised a new legal theory *sua sponte* and reversed the trial court's decision.  Noting that in a separate statute the legislature recognized the sale of race horses as integral to horse racing activities and that horse racing activities are specifically exempted from the FAAA, the appellate court concluded the trial court erroneously dismissed the Prathers' claims.  On discretionary review, we reverse the Court of Appeals and reinstate the order granting summary judgment.

## FACTS AND PROCEDURAL HISTORY

Roy J. Prather visited Keeneland during the 2016 September Yearling Sale event.  Sales events involve an enclosed sales pavilion where the auctions occur and a separate "backside" where horses are stalled, shown to prospective purchasers, and loaded and unloaded into horse vans as they come and go from the premises.  Prather was at Keeneland as an employee of *Indian Charlie*, an independent satirical newspaper containing information and advertisements

2

relating to the thoroughbred industry. His sole purpose for being at the sales event was distributing the newsletters from his employer. Prather parked at Keeneland's track kitchen, received a batch of the newsletters, and proceeded across the premises, passing out newsletters at various sale barns along the way.

By way of background, once a horse is purchased in the Keeneland sales pavilion, the purchaser must arrange for transport of the horse off the premises. A purchaser can approach the van table and select a transportation company to move the horse. Typically, a number of different transportation companies work the Yearling Sale, companies such as Appellee Sallee Horse Vans, Inc. During the Yearling Sale, Sallee utilizes independent contractors, called shankers or handlers, who are responsible for getting a horse from its specific barn and taking it to the appropriate horse van. Elizabeth Sadler, a corporate representative for Sallee, testified by deposition that they do not document which handler walks a horse from the barn to its vans for transport, but that a Sallee employee called a dispatcher ordinarily maintains records of which handlers worked on a given sale day.[1]

On the day of his fall, Prather returned to the kitchen to get more newsletters and on his way back toward the track he and others were stopped

---

[1] Sadler testified that typically horse handlers are familiar with the horse industry. When there is a horse sale, they contact various horse transport companies, like Sallee, and ask whether help is needed. If help is needed, the handler is instructed to go to the sale and check in with the dispatchers. Sallee has a dispatcher present at Keeneland who determines whether a handler will work for Sallee during the sale.

by a Keeneland crossing guard at a designated horse crossing path so a handler could lead a horse into a van for transportation off the premises. Prather did not know the name of the handler he saw leading the horse but testified by deposition that Prather believed he saw the handler with Sallee employees earlier in the day and thus assumed the handler was working for Sallee. After the horse crossed the path and left the immediate vicinity the crossing guard permitted Prather and others to proceed along their path. As the horse was entering the loading chute, the horse broke free from its handler. Someone yelled "loose horse," causing Prather to turn around and observe the horse moving in his direction. As Prather turned to move away from the horse he alleges that he felt a "push" on his shoulder and he fell over, fracturing his shoulder. Prather could not explain what caused him to fall, but said the horse was close enough to him that he assumed the horse kicked him. One of the crossing guards radioed for help and an ambulance transported Prather to the hospital.[2]

On August 25, 2017, Prather and his wife, Nancy Prather, filed a complaint in the Fayette Circuit Court against Keeneland and Sallee. His claims included various forms of negligence based largely on alleged deficiencies in the horse and pedestrian routing on the backside of the track and the actions or omissions of Keeneland's security personnel. The complaint

---

[2] In his deposition Prather stated that three Keeneland crossing guards were in the vicinity when his injury occurred, but only identified two of the crossing guards by name.

4

also included allegations that Sallee failed to properly secure the horse while leading it to the loading dock.

On June 21 and July 25, 2018, Sallee and Keeneland filed separate motions for summary judgment under the FAAA. KRS 247.401-.4029. The FAAA recognizes that there are inherent risks associated with farm animals, including horses, that are beyond the reasonable control of farm animal activity sponsors, professionals, or other persons. The FAAA was enacted "to aid courts and juries in defining the duties of persons responsible for farm animals to others who have chosen to participate in farm animal activities." KRS 247.4013. As such, KRS 247.402 bars certain claims arising from farm animal activities.

Specifically, Keeneland argued that the Prathers' claims are barred under the FAAA because Keeneland is a "farm animal activity sponsor" and Prather is a "participant in farm animal activities" whose injury resulted from the "inherent risks of farm animal activities" within the meaning of KRS 247.4015. Sallee filed a similar motion for summary judgment asserting it is a "farm animal professional" according to KRS 247.4015(6)(a) and is engaged in farm animal activity under KRS 247.4015(1). Sallee also asserted that Prather was engaged in farm animal activity under KRS 247.4015(1) and (10) by being a spectator who placed himself in immediate proximity to the activity or by being a participant. Prather opposed the motions for summary judgment by alleging he was not a "participant" under the FAAA and that summary judgment was premature because discovery was ongoing.

The trial court conducted a hearing and orally concluded that the FAAA applied, barring the Prathers' claims. The trial court held that Prather was a participant in the activities and that his injury was a result of the inherent risks in horse sale activities. A written order granting summary judgment to Keeneland and Sallee was entered but it did not contain any additional findings.

Prather appealed, and the Court of Appeals reversed the trial court order granting summary judgment on different legal grounds than those advanced by Prather. The Court of Appeals applied the horse racing activity exception, KRS 247.4025(1), which states that horse racing activities are exempt from the FAAA. The Court of Appeals concluded that the September Yearling Sale at Keeneland constituted a horse racing activity, relying on KRS 230.357, a provision in a separate chapter of KRS which pertains to the sale of race horses and outlines various statutory requirements to effectuate the sale of a race horse. The Court of Appeals reasoned that "[b]y placing KRS 230.357 within the statutory framework regulating race and show horses, we believe the legislature recognized the sale of race horses as being integral to horse racing and, in fact, innately intertwined therewith." On this analysis, the Court of Appeals held the FAAA is inapplicable and does not bar the Prathers' claims against Keeneland or Sallee.

Having granted discretionary review, heard oral arguments and carefully considered the record, we reverse the Court of Appeals. Given the undisputed facts and applicable law, the trial court properly granted summary judgment.

## ANALYSIS

In granting summary judgment, the trial court issued oral findings that the FAAA applies to Keeneland and Sallee, that Prather was a participant in farm animal activity and that the risks that led to Prather's injury were inherent in the activity. We consider first whether the FAAA applies to Keeneland, Sallee and Prather, and then determine whether summary judgment was appropriately granted.

**I.      The FAAA Applies to Keeneland, Sallee and Prather.**

This case turns on the interpretation of the FAAA, which provides limited liability for those engaged in farm animal activities. "[I]f a statute is clear and unambiguous and expresses the legislature's intent, the statute must be applied as written." *Hall v. Hosp. Res., Inc.,* 276 S.W.3d 775, 784 (Ky. 2008). "The words of the statute are to be given their plain meaning unless to do so would constitute an absurd result." *Exec. Branch Ethics Com'n v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002). The language of the FAAA is clear and the provisions are easily applied to the parties and activities in this case.

The FAAA was enacted to define the duties of persons responsible for farm animals[3] to others who participate in farm animal activities. KRS 247.4013. Recognizing the importance of supporting farm animal activities in this state, the Act bars certain claims arising from farm animal activities:

> The inherent risks of farm animal activities are deemed to be
> beyond the reasonable control of farm animal activity sponsors,

---

[3] The Act defines "farm animal" as "one (1) or more of the following domesticated animals" and then lists several types of animals including "horses."

7

farm animal professionals, or other persons.  Therefore, farm animal activity sponsors, farm animal professionals, or other persons are deemed to have the duty to reasonably warn participants in farm animal activities of the inherent risks of the farm animal activities but not the duty to reduce or eliminate the inherent risks of farm animal activities.  Except as provided in subsections (2) and (3) of this section, no participant or representative of a participant who has been reasonably warned of the inherent risks of farm animal activities shall make any claim against, maintain an action against, or recover from a farm animal activity sponsor, a farm animal professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of farm animal activities.

KRS 247.402(1).  "Farm animal activities" are defined in KRS 247.4015(3)

which includes, in relevant part,

> (d) Rides, trips, shows, clinics, demonstrations, **sales**, hunts, parades, games, exhibitions, or other activities of any type, however informal or impromptu, that are sponsored by a farm animal activity sponsor or other person[.]

(Emphasis added.)

Keeneland asserts that it is entitled to the protections of the FAAA as a

farm animal activity sponsor, defined by KRS 247.4015(4) as

> an individual, group, club, partnership, corporation, or other legally constituted entity, whether the sponsor is operating for profit or nonprofit, which sponsors, organizes, allows, or provides the facilities for a farm animal activity . . . .

Keeneland qualifies as a farm animal activity sponsor under this subsection

because it organized and provided the facilities for the horse sale and, in turn,

"sales" are explicitly listed as a farm animal activity.  KRS 247.4015(3).

Generally, farm animal activity participants are barred from bringing a

claim against a farm animal activity sponsor, a farm animal professional or a

8

person as defined in KRS 247.4015(11).[4]  KRS 247.4015(10) defines a farm animal activities "participant" as "any individual, whether amateur or professional, who engages in a farm animal activity, whether or not a fee is paid to participate in the farm animal activity . . . ."  The statute further defines "engages in a farm animal activity" as

> leading, showing . . .  driving, or being a passenger upon a farm animal, whether mounted or unmounted; . . . or utilizing a farm animal facility as part of an organized event or activity; or assisting a participant or show management in farm animal activities.  The term does not include being a spectator at a farm animal activity, except in cases where the spectator voluntarily places himself or herself in immediate proximity to the activity . . . .

KRS 247.4015(1).

Sallee is engaged in the business of horse transportation and KRS 247.4015(1) expressly references "leading" a farm animal.  The Sallee handler was engaging in farm animal activity by leading the horse to a van at the time Prather was injured.  KRS 247.4015(1).  Also Sallee's handling of the horse occurred in the context of a sale, which is explicitly considered a farm animal activity.  KRS 247.4015(3).  Finally, Sallee qualifies as a "person" under KRS 247.4015(11) because it is a corporation that "controls" farm animals, thus fitting squarely within the liability limitation provision in KRS 247.402(1).  Sallee is thus afforded protection under the FAAA.

---

[4] The Act defines "person" as "any individual, corporation, association, or other legally constituted entity that owns or controls one or more farm animals."  Sallee qualifies as a "person" under KRS 247.4015(11) because it is a corporation that "controls" farm animals, thus fitting squarely within the liability limitation provision in KRS 247.402(1).

The parties dispute whether Prather was a farm animal activity participant or a spectator at the time of his injury. Keeneland and Sallee argue that Prather was a participant in farm animal activity because he was in the sale barn area to distribute newsletters that contained satirical information about the sale and sale participants. Prather disagrees and asserts that he was a spectator because his sole purpose for being on Keeneland premises was to distribute the newsletter, not to buy, sell or lead horses. He also states that he did not place himself within immediate proximity of the farm animal activity, an alleged fact that is relevant only if Prather is a spectator. KRS 247.4015(1). While Prather was not involved in the actual sale or handling of any horses, he deliberately placed himself at the backside of the track where the horses were being stalled, shown to prospective purchasers, and loaded and unloaded into horse vans as they arrived and departed the Keeneland premises. He was present on the backside of the track to disseminate information related to the sale, distinguishing him from a mere sale spectator.

The Keeneland sales pavilion, where the auction activity occurred, houses a designated spectator area with enclosed stadium seating, concessions, conference rooms and a business center. The premises include a free spectator parking lot and due to the layout of the property spectators wanting to view the sale can access the pavilion without ever coming into contact with a horse. The spectator area and the sales area are separated.

As noted, at the time of his injury Prather was paid to distribute newsletters. Prather testified that he deliberately distributed the newsletters

10

on the backside of the track and in the sale barns. He was not in the areas designated for spectators. The trial court's finding that Prather was not a mere spectator but rather a participant is supported by substantial evidence. In sum, Prather qualifies as a participant under the FAAA because he was an individual engaged in a farm animal activity. KRS 247.4015(10).

Having established that the FAAA is applicable to the parties, we turn to whether either Keeneland or Sallee is entitled to the protections of the FAAA based on the facts of this case. While the FAAA generally precludes Prather, who was reasonably warned of the inherent risks of the farm animal activity at Keeneland, from bringing a claim against Keeneland or Sallee, there are exceptions.

In his complaint Prather alleged that Keeneland and Sallee "negligently, recklessly and willfully and wantonly failed to secure . . . the race horse which caused [his] fall." Prather also alleged that Sallee breached its duty to him by losing control of the race horse in a crowded environment. Through his allegations in the complaint and responses to the motions for summary judgment, Prather asserts claims under each of the five exceptions:

> (2) Nothing in subsection (1) of this section shall prevent or limit the liability of a farm animal activity sponsor, a farm animal professional, or any other person if the farm animal activity sponsor, farm animal professional, or person:
>
> > (a) Provided the equipment or tack, and knew or should have known that the equipment or tack was faulty, and the equipment or tack was faulty to the extent that it contributed to the injury;
> >
> > (b) Provided the farm animal and failed to make reasonable and prudent efforts to determine the ability of the participant

11

to engage safely in the farm animal activity and to safely manage the particular farm animal based on the participant's representations of the participant's ability;

(c) Owns, leases, has authorized use of, rents, or otherwise is in lawful possession and control of the land or facilities upon which the participant sustained injuries because of a dangerous latent condition which was known or should have been known to the farm animal activity sponsor, farm animal professional, or person and for which warning signs have not been conspicuously posted;

(d) Commits an act or omission that constitutes willful or wanton disregard for the safety of the participant, and that act or omission caused the injury; or

(e) Negligently or wrongfully injures the participant.

KRS 247.402(2).

Although the FAAA limits the liability of farm animal activity sponsors, farm animal professionals, and "persons," KRS 247.4025(1) specifically provides that FAAA protection "shall not apply" when farm animal activity sponsors, professionals, persons or participants are "engaged in horse racing activities." "Horse racing activities" are defined as "the conduct of horse racing activities within the confines of any horse racing facility licensed and regulated by KRS 230.070 to 230.990, but shall not include harness racing at county fairs[.]" KRS 247.4015(8). Notably, this reference to a licensed and regulated facility is the only reference to KRS Chapter 230 in the entire FAAA.

For Prather to proceed on his claims against Keeneland and Sallee he must show either that the defendants were engaged in horse racing activities, rendering the FAAA inapplicable, KRS 247.4025(1), or show that one of the exceptions in KRS 247.402(2) applies. If Prather's injury is the result of the

12

"inherent risks of farm animal activities" then the FAAA bars his claim. KRS 247.402(1).

## II.    The FAAA'S Horse Racing Exception Does Not Apply.

The Court of Appeals determined that because the legislature referenced KRS Chapter 230 in the FAAA, i.e., the Act does not apply to horse racing activities at facilities "licensed and regulated by KRS 230.070 to 230.990," it recognized that the sale of race horses is "innately intertwined" with horse racing. With that curious leap of logic the Court of Appeals concluded the horse racing exception to the FAAA applied. The exception, KRS 247.4025(1), focuses however not only on the person or entity involved but also the farm animal activity at issue. In this case, even though the sale occurred at Keeneland, a licensed horse racing facility regulated by KRS Chapter 230, no horse racing activities were occurring at the time of the sale. The FAAA exception does not apply simply because Keeneland is a licensed horse racing facility under KRS Chapter 230.[5] The Court of Appeals' interpretation

---

[5] Further, KRS 230.280(1) states that "[n]o person shall hold or conduct any horse race meeting for any stake, purse or reward within the Commonwealth of Kentucky without securing the required license from the racing commission." KRS 230.260(1), which outlines the authority of the Kentucky Horse Racing Commission, states that "[t]he racing commission is vested with jurisdiction and supervision over all horse race meetings in this Commonwealth and over all associations and all persons on association grounds . . . ." An "association" is defined by KRS Chapter 230 as "any person licensed by the Kentucky Horse Racing Commission under KRS 230.300 and engaged in the conduct of a recognized horse race meeting." KRS 230.210. The Court of Appeals emphasized that Keeneland is licensed and regulated by KRS Chapter 230. However, sales and racing at Keeneland never occur simultaneously. When Keeneland is operating as a sales facility it is not engaged in any racing activity governed by KRS Chapter 230 so there is no rational basis for treating it differently than a facility conducting the exact same sales activity at an unlicensed location.

completely ignores the nature of the activity occurring at Keeneland at the time Prather was injured.

Nothing in the record supports a conclusion that Keeneland, Sallee or Prather were engaged in the "conduct of horse racing activities" under any reasonable meaning of the phrase. The only activities occurring on the Keeneland premises were the transport of horses, by hand, to and from the backside, sales arena, and transport vans where the horses were loaded and taken off the premises after being purchased. No live racing was occurring, Keeneland's racing meets being confined to April and October of each year. Horse sales and horse racing are entirely different activities and the FAAA treats them as such. While the Court of Appeals' classification of Keeneland as a horse racing facility is proper, Keeneland was not operating as a horse racing facility during the September Yearling Sale. Therefore, the blanket exemption of horse racing activity from the FAAA in KRS 247.4025(1) is inapplicable.

The legislative history of the FAAA also supports our conclusion that the General Assembly intended to treat horse racing and horse sales differently, requiring not only a licensed horse racing facility but also horse racing activity in order for the FAAA exemption to apply. In 2015 the General Assembly amended KRS 247.4015 and the definition of farm animal activity to explicitly include sales. KRS 247.4015(3)(d). This addition to the statute makes the General Assembly's intent abundantly clear. It is fundamental that in determining the meaning of a statute, we must defer to the language of the statute and we are not at liberty to add or subtract from the legislative

14

enactment or interpret it at variance from the language used. *Caesars Riverboat Casino, LLC v. Beach,* 336 S.W.3d 51, 56 (Ky. 2011) (citing *Johnson v. Branch Banking and Trust Co.,* 313 S.W.3d 557, 559 (Ky. 2010)). Interpreting the horse racing activities exemption in accordance with its plain meaning creates a result that is consistent with the legislative intent of the FAAA.

The purpose of KRS Chapter 230, which governs horse racing and showing, is to "vest in the racing commission forceful control of horse racing in the Commonwealth with plenary power to promulgate administrative regulations prescribing conditions under which all legitimate horse racing and wagering thereon is conducted in the Commonwealth . . . ." KRS 230.215(2). KRS 230.357, enacted in 2006, requires that all transfers of horses, stallion seasons, or economic interests in horses be evidenced by a bill of sale and that any person acting as an agent for both a purchaser and a seller receive the informed consent of both parties. This provision focusing on the sales transaction is the only manner in which KRS Chapter 230 addresses "sales." Importantly, KRS 230.357 was enacted ten years after the FAAA and almost ten years before the General Assembly specifically amended the definition of farm animal activities in KRS 247.4015(3)(d) to include "sales." Thus, when the FAAA was enacted (1996), KRS Chapter 230 did not reference horse sales in any way. We presume that the legislature is "aware of existing laws when enacting a new statute," *Pearce v. University of Louisville*, 448 S.W.3d 746, 760 (Ky. 2014), and we find no reasonable basis for concluding that the General Assembly intended KRS 230.357 to limit the scope and protections of the

15

FAAA, particularly since "sales" were added to the farm animals activity definition in 2015.

This Court has previously considered the applicability of the FAAA to horse sales in *Daugherty v. Tabor,* 554 S.W.3d 319 (Ky. 2018). Tabor, a prospective horse buyer, contacted Daugherty Stables about buying several horses and visited the stables to test ride horses. *Id.* at 320. While test riding a horse, Tabor lost control and was thrown from the horse, suffering several injuries. *Id.* Tabor alleged that Daugherty breached various duties under the FAAA but Daugherty argued that as a farm animal activities professional they satisfied the FAAA's mandate to warn participants about the inherent dangers of horseback riding. *Id.* at 321. The crux of the case turned on whether Daugherty satisfied the duty to ensure that Tabor had the requisite skill to ride the horse, KRS 247.402(2)(b), and whether the actions of Daugherty and his employees were reasonable under the FAAA. Notably, this Court held that liability for the horse's unpredictable reaction to Tabor was abrogated by the FAAA.

While *Daugherty* involved the sale of only a few horses, compared to a large sales event like the Yearling Sale at Keeneland, it nonetheless constitutes an instance where this Court has found that a horse sale was within the protections of the FAAA. Indeed, given the plain legislative intent we could not hold otherwise. Because the sale of horses constitutes a farm animal activity and Keeneland constituted a farm animal activity sponsor at the time of Prather's injury, it is entitled to the protections of the FAAA. Further, because

16

Sallee was a "person" engaged in farm animal activities by handling the horse to transport it off the premises, it is also afforded the protections of the FAAA. The Court of Appeals' strained construction of the horse racing exemption is simply not justified.

### III. Prather's Injury Stemmed from an Inherent Risk of Engaging in Farm Animal Activity.

The FAAA explicitly recognizes that there are inherent risks in working with and around farm animals, risks that are "essentially impossible . . . to eliminate." KRS 247.401. In enacting the FAAA the legislature recognized the widespread occurrence of farm animal activities in Kentucky and the economic benefits such activities bring to the state. The FAAA is "necessary to instruct persons voluntarily engaging in farm animal activities of the potential risks inherent in the activities." KRS 247.401. A stated purpose of the FAAA is to "preserve and promote the long Kentucky tradition of activities involving farm animals" while also protecting "the health and safety" of Kentucky citizens. *Id.* "[P]ersons do not have a duty to eliminate risks inherent in farm animal activities which are beyond their immediate control if those risks are or should be reasonably obvious, expected, or necessary to participants engaged in farm animal activities." KRS 247.4013.

The FAAA also imposes a duty on farm animal activity participants, (Prather in this case), to "act in a safe and responsible manner at all times to avoid injury to the participant and others and to be aware of risks inherent in farm animal activities to the best of the participant's ability." KRS 247.4019. "Inherent risks of farm animal activities" are defined as

17

dangers or conditions which are an integral part of farm animal activities, including, but not limited to;

> (a) The propensity of a farm animal to behave in ways that may result in injury, harm, or death to persons around them;
>
> (b) The unpredictability of the reaction of a farm animal to sounds, sudden movement, and unfamiliar objects, persons, or other animals;
>
> (c) Certain hazards such as surface and subsurface conditions;
>
> (d) Collisions with other farm animals or objects; and
>
> (e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over a farm animal or not acting within his or her ability[.]

KRS 247.4015(9).

KRS 247.4027 requires farm animal activity sponsors and professionals to post and maintain signs that warn participants of inherent risks. All parties agree that Keeneland had clearly visible signs posted in accordance with KRS 247.4027(3):

**WARNING**

> Under Kentucky law, a farm animal activity sponsor, farm animal professional, or other person does not have the duty to eliminate all risks of injury of participation in farm animal activities. There are inherent risks of injury that you voluntarily accept if you participate in farm animal activities.

The foundation of the FAAA is that a participant who has been reasonably informed of the inherent risks of farm animal activities cannot make a claim against a sponsor, professional or any other person for their injury, unless an exception applies. KRS 247.402(1). This limitation on claims

18

arising from farm animal activities serves to accomplish the purpose of the act itself, which is to promote farm animal activities for the benefit of Kentucky as a whole. Additionally, the Act specifically recognizes that inherent risks of farm animals are "essentially impossible . . . to eliminate." KRS 247.401.

While it is unclear what precisely caused the horse to break loose from its handler on that day in September 2016, the FAAA recognizes the unpredictability of a farm animal as an inherent risk. KRS 247.4015(9)(b). A horse becoming "spooked" or getting loose from its handler is something farm animal activity sponsors and participants should recognize as an obvious risk. Indeed, the FAAA recognizes that farm animals may react to sounds, sudden movement, or unfamiliar objects, persons or other animals. Prather, a participant familiar with horses generally and Keeneland particularly, testified that Keeneland was especially crowded on the day of the sale. Specifically, he testified that the area where the horse was crossing was very crowded with people. Any number of things could have startled the horse and caused it to break loose from the handler.

Although not dispositive in our analysis, we note that Prather had more experience in the horse industry than many Kentuckians, having had two previous employment experiences involving horses. He acknowledged that he was familiar with the Keeneland grounds and Keeneland sales. He also acknowledged that when he worked for another company during a sale a horse got loose so he knew that was a type of risk associated with horses. He understood that horses present a risk of injury and thus while distributing

19

newsletters he tried to keep his distance from the horses because he did not want to "spook a horse." Additionally, Prather acknowledged seeing the warning signs, as required by KRS 247.4027(3), posted at Keeneland and knowing that there were inherent risks of being around horses. On cross-examination at his deposition, he stated he understood that he subjected himself to certain risks by being at Keeneland to distribute the newsletters.

While several questions regarding the incident remain unanswered, it is clear that Prather's injury was caused by a horse getting loose from its handler. Although Prather is unable to describe the mechanism of his injury—whether the horse kicked him, another pedestrian pushed or bumped into him when panic ensued, etc.—the injury unquestionably stemmed from the horse's behavior in escaping the handler. Prather did not see the horse break free from its handler, so he was unable to speculate as to how or why the horse broke loose. Additionally, the area of Keeneland in which Prather was injured was a designated crossing area for horses, a space where people and horses came into close proximity.

In sum, by voluntarily attending the Yearling Sale at Keeneland and acting as a farm animal activity participant, Prather subjected himself to the inherent risks associated with horses. The injury he suffered is precisely the type of injury that is foreseeable when a horse unpredictably breaks loose from its handler. Holding Keeneland or Sallee liable for his injury would contradict the purpose of the FAAA and the protections afforded to farm animal activity

20

sponsors, professionals and persons for farm animal behavior, behavior which to a large extent cannot be predicted or controlled.

On appeal, we review a summary judgment *de novo.  Shelton v. Ky. Easter Seals Soc'y, Inc.,* 413 S.W.3d 901, 905 (Ky. 2013).  We consider whether the trial court "correctly determined that there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law." *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 59 (Ky. 2010).  The Prathers failed to present evidence demonstrating genuine issues of material fact.[6]

"Designed to be narrow and exacting so as to preserve one's right to trial by jury, summary judgment is nevertheless appropriate in cases where the nonmoving party relies on little more than 'speculation and supposition' to support his claims." *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010) (citing *O'Bryan v. Cave,* 202 S.W.3d 585, 588 (Ky. 2006).  Here, Prather could not identify the cause of his fall and did not present statements or testimony from any eyewitnesses that would support a conclusion that his fall was not the result of the inherent risks associated with farm animals, in this case a "loose horse."  The primary source of evidence is his own testimony.  "The party opposing summary judgment cannot rely on

---

[6] In Prather's responses to interrogatories he stated that his counsel possessed two recorded statements from two of the crossing guards who were present at the scene.  The contents of the statements are unknown, and it is unclear why eyewitness statements were not made part of the record, especially given the uncertainties surrounding the events that transpired.  The Prathers' case was pending for one year in the trial court before summary judgment was granted, allowing sufficient time for discovery and development of their claim and submission of proof for the trial court's consideration.

21

their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.,* 50 S.W.3d 195, 199 (Ky. 2001). Simply put, the Prathers have not presented any affirmative evidence to support their assertion that the FAAA does not bar their claims against Keeneland and Sallee. The trial court properly granted summary judgment.

## CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals and reinstate the order of the Fayette Circuit Court granting summary judgment to Keeneland and Sallee.

Minton, C.J.; Conley, Keller, Lambert, and Nickell, JJ., concur. VanMeter, J., not sitting.

COUNSEL FOR APPELLANT,
KEENELAND ASSOCIATION, INC:

Woodson Chapman Hopkins
Steven B. Loy
Stoll Keenon Ogden PLLC

COUNSEL FOR APPELLANT,
SALLEE HORSE VANS, INC:

Gregg Edward Thornton
Jillian Dove House
Ward Hocker & Thornton PLLC


COUNSEL FOR APPELLEES:

Nicholas D. Summe
Martin Sebastian Summe
Summe & Summe PSC